[Civ. No. 44396. First Dist., Div. Two. Apr. 25, 1979.]

Estate of CLYDE JOHN ASVITT, Deceased.
JACQUELINE ASVITT, Petitioner and Appellant, v.
FLORISCA M. GANGAMIE, Objector and Respondent.

**COUNSEL**

Jerome A. Blaha for Petitioner and Appellant.

Seyranian & Seibert, David I. Fischer and Hal F. Seibert for Objector and Respondent.

**OPINION**

**TAYLOR, P. J.**—Jacqueline Asvitt, the former wife of the decedent, Clyde J. Asvitt, appeals from a judgment decreeing that pursuant to their property settlement on dissolution, she and the testator held the family home as tenants in common and not as joint tenants and, therefore, his interest in the home passed to Florisca M. Gangamie, an unrelated person who was the sole beneficiary and named executrix of his will. The former wife contends that: 1) there was no proof of intent to sever joint

tenancy in the family home; 2) the presumption of joint tenancy was not rebutted; and 3) the joint tenancy could not be terminated by the subsequent property settlement agreement on dissolution. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The record reveals the following pertinent facts: Jacqueline and Clyde were married in 1953; their two children, David and Darcy, were born in 1955 and 1957, respectively. The family home at 1850 Vining Drive, San Leandro was acquired in joint tenancy by a grant deed dated January 24, 1957. The interlocutory decree of dissolution dated 1971 became final in 1972. The parties executed a property settlement agreement, which was incorporated into the decree of dissolution. The pertinent portions of the property settlement agreement are set forth below.[1]

In 1974, Clyde executed a will naming the children who were then 16 and 18, respectively. The will further provided, so far as pertinent, as set forth below.[2] After Clyde's death, his will was admitted to probate on

---

[1]"2. That *each of the parties shall have an immediate right to* dispose of or *bequeath by Will his* or her *respective interest in* and to *any and all property* belonging to him or her, from and after the date hereof, and that said right shall extend to all of the aforesaid future acquisitions of property as well as to all property set over to either of the parties hereto under this agreement.

"3. That said parties hereto *each hereby waive any and all right to the estate of the other left at his or her death and forever quitclaim any and all right to share in the estate of the other* . . .

"4. *Each party does and shall accept the provisions herein made in full satisfaction of all right to any community property* of the respective parties hereto. . . . .

"10. *With respect to the real property owned by the parties . . . it is agreed that the title to said real property located at 1850 Vining Drive, San Leandro, California, will remain in the names of both parties and wife will maintain a monthly installment payment thereon. It is further agreed that said real property will be sold upon the re-marriage of wife, the attaining the age of majority of the youngest child of the parties, or at any time that the parties hereto shall mutually agree and the proceeds therefrom divided equally between them after deduction for cost of sale*" (italics added).

[2]"ARTICLE THIRD [¶] *It is my intention to dispose of all real* and personal *property which I have the right to dispose of* by Will, of whatever description *and wherever located,* including any and all property as to which I have or may have the power of appointment by Will.

"ARTICLE FOURTH [¶] *I hereby confirm that all property standing in joint tenancy,* including all joint bank accounts with myself and any other person, *shall go to the survivor without necessity of probate.* . . .

"ARTICLE FIFTH [¶] *I hereby give, devise and bequeath all of my property* wheresoever located and howsoever described, both *real* and personal over which I have the power of disposition by Will, *or any interest* in whatsoever including any and all property, real and personal over which I have a power of appointment by Will *to* FLORISCA MARYLOUISE GANGAMIE. . . .

"ARTICLE SEVENTH [¶] I declare that, except as expressly provided for in this Will, *I have intentionally made no provisions for any other person,* whether claiming to be an heir of mine or not, and if any person shall be successful in a court of final jurisdiction in

February 17, 1977. On September 6, 1977, Jacqueline filed a petition alleging that pursuant to article Fourth of the will, quoted below at footnote 2, as the surviving joint tenant, she was entitled to the family home. Her petition also set forth an April 28, 1976, order denying Clyde's motion to force the sale of the family home after the youngest child reached 18 and modifying the decree of dissolution, as set forth below.[3]

In December 1977, the court in the instant matter found that the intent of the decedent and his former wife was to hold the family home as tenants in common as a direct result of their property settlement agreement on dissolution and entered judgment accordingly.

As the former wife correctly contends, we review the entire cause to determine whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error (*Downing* v. *Barrett Mobile Home Transport, Inc.,* 38 Cal.App.3d 519, 525 [113 Cal.Rptr. 277]; *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453, 457 [26 Cal.Rptr. 208]; *Wiley* v. *Easter,* 203 Cal.App.2d 845, 858 [21 Cal.Rptr. 905]; *Murphy* v. *Atchison T. & S.F. Railway,* 162 Cal.App.2d 818, 823 [329 P.2d 75]; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]).

■ A joint tenancy may be terminated either by mutual agreement between the parties or by any conduct or course of dealings sufficient to indicate that all parties have mutually treated the joint tenancy as terminated (*Smith* v. *Morton,* 29 Cal.App.3d 616, 621 [106 Cal.Rptr. 52]; *Hiltbrand* v. *Hiltbrand,* 13 Cal.App.2d 330, 333 [56 P.2d 1292]). An agreement between the tenants which while it does not expressly terminate the tenancy, is inconsistent by its terms with one or more of the four essential unities of a joint tenancy, will also be adjudged to be a severance thereof. Thus, interference with the right of survivorship by the terms of an agreement will sever the joint tenancy relationship (*Wardlow* v. *Pozzi,* 170 Cal.App.2d 208, 210 [338 P.2d 564]).

establishing a right to any portion of my estate except as expressly provided for in this Will, I give and bequeath to each such person the sum of Five Dollars ($5.00) and no more." (Italics added.)

[3] ". . . this court specifically finds that *the language incorporated in the Marital Settlement Agreement,* dated December 13, 1971 and executed by both parties, *shall be interpreted, as was the law at the time of execution, to equate 'age of majority' with the age of 21 years,* and the provisions for the sale of the family home upon the reaching of the age of majority by the youngest child of the parties hereto, shall be interpreted to mean that said family home shall be offered for sale and sold upon the written agreement of the parties hereto, or upon the reaching of the age of 21 years on the part of the minor daughter of the parties hereto, whichever event occurs first." (Italics added.)

Contrary to the former wife's argument, *Wardlow, supra,* supports the trial court's judgment in the instant case. In *Wardlow,* the husband and wife were the joint tenancy owners of land under lease to a third party. In the property settlement agreement attending their divorce action, they agreed that " '. . . each of the parties shall have the option to purchase the other's one-half interest . . . *or that the said property shall be sold and the net proceeds divided equally between the said parties.*' " (*Wardlow,* p. 210; (italics added.) As the agreement had not been executed at the time the husband died, the question of whether the agreement terminated the joint tenancy was raised in subsequent litigation and resolved as follows by the appellate court: "Thus, prior to the agreement, neither party had an absolute right to purchase from the other, nor did either have the right to insist that the property be sold and the proceeds divided. Hence by the agreement they surrendered some of those rights; that is, each was bound to sell to the other or both to a third party. And certainly *the right of either party to insist upon a sale . . . to . . . the other . . . was wholly inconsistent with the continuance of the joint tenancy relationship. Likewise such a provision would appear to negate any intent of the survivor to succeed to the other's interest*" (*Wardlow, supra,* pp. 210-211). (Italics added.) ■ Similarly here, the joint tenancy created by the grant deed executed by the parties on January 24, 1957, was effectively destroyed by the subsequent 1971 property settlement agreement which provided that the family home "will be sold" on occurrence of one of three stated conditions.

Nevertheless, relying on *Duncan* v. *Suhy,*[4] 378 Ill. 104 [37 N.Ed.2d 826], and *Miranda* v. *Miranda,* 81 Cal.App.2d 61 [183 P.2d 61], the former wife argues that a joint tenancy cannot be severed by a property settlement agreement. In *Miranda,* as in the Illinois case, *supra,* the agreement there in issue provided that the property " '. . . shall remain in the name of the

[4]She concedes, however, that the property settlement agreement there in issue provided for a possible future sale as follows: " 'Both parties . . . agree that each party shall retain his or her one-half interest in the home property . . . *if* a sale of said property shall be agreed upon by both parties, the net proceeds . . . shall be divided equally between these parties; and *in the case of rental* . . . [the rental] shall be divided equally between the parties . . .' " (italics added; *Duncan, supra,* p. 828).

Thus, in referring to the above quoted clause, the Illinois court noted at page 829: "It will be observed that this clause contains no provision to convey the property . . . nor to sell the same, but provides what shall be done *in case of rental of the property or its sale*" (italics added).

We also note that Duncan was subsequently distinguished by the Illinois court in *Thomas* v. *Johnson* (1973) 12 Ill.App.3d 302 [297 N.Ed.2d 712, 714]; in *Thomas,* the Illinois court cited *Wardlow* v. *Pozzi, supra,* 170 Cal.App.2d 208, and held that the language of the property settlement agreement integrated into the decree of dissolution disclosed that the parties intended a division of the property and were not merely stating the relative rights to it.

parties hereto as joint tenancy, *so long as* the first party does not remarry and *so long as* said property is kept by first party as a home for herself and the children. . .' " (Italics added; *Miranda, supra,* p. 65). The phrase "so long as" bespeaks a condition subsequent, while the language of the property settlement agreement in the instant case unconditionally provided that the family home *"will be sold upon"* the happening of any one of three specifically named events: the remarriage of the former wife, majority of the younger child, or the mutual agreement of the parties.[5] Here, by the property settlement agreement incorporated into the dissolution agreement, the parties terminated a joint tenancy. An agreement to sever operates to effect a severance, and the intervening death of one of the joint tenants will not defeat the severance even though the agreement is not performed (cf. *Thomas* v. *Johnson, supra,* at pp. 714-715). The former wife argues that there is insufficient indication of an intent to terminate the joint tenancy, as article Fourth of the subsequently executed 1974 will specifically referred to joint tenancy property.[6] However, Clyde's subsequent attempt to force a sale of the home in 1976 when the youngest child reached 18, clearly indicates that he regarded the family home as community property. The trial court properly and reasonably construed paragraph 10 of the property settlement agreement (quoted above at fn. 2) pertaining to the sale of the home as one intended to permit the wife and minor children to remain in the family home until one of the three specified conditions occurred. This interpretation is also supported by paragraphs 2, 3 and 4 of the agreement quoted above at footnote 1 on page 350, which indicate that the agreement was to settle all of the property rights of the parties, as well as paragraph 13 of the property settlement agreement (pertaining to custody), which expressly refers to the parties' love and affection for their children and concern for the best interest of their children. Thus, the language of the property settlement agreement and the subsequent conduct of the parties fully

---

[5]The former wife's remaining authorities are readily distinguishable and need not be discussed in detail. In *Teutenberg* v. *Schiller,* 138 Cal.App.2d 18, 22 [291 P.2d 53], there was no agreement as to a settlement of the property rights of the parties, and the court held that the mere filing of a partition action did not sever a joint tenancy, and that termination of a joint tenancy is effectuated only by final judgment. The instant record indicates that a final judgment of dissolution of marriage, incorporating the property settlement agreement was entered on May 18, 1972, and was modified in 1976, as indicated above at footnote 3 on page 351. In *McDonald* v. *Morley,* 15 Cal.2d 409 [101 P.2d 690, 129 A.L.R. 810], the property settlement agreement provided that the property shall " 'be and remain in Joint Tenancy, *as it now stands, until such property can be sold . . .* ' " (*McDonald,* p. 410; (italics added).

[6]The record does not disclose whether or not Clyde owned property in joint tenancy with someone other than the former wife. If he did, the purpose of article Fourth is obvious; if not, article Fourth is an example of the danger of using forms to draft wills.

supports the trial court's conclusion that the joint tenancy was terminated at the time of the dissolution.

In any event, pursuant to the modification of the property settlement agreement, during the pendency of this appeal the youngest child of the parties reached the age of majority on August 24, 1978[7] (1957 + 21), a matter of which we may take judicial notice.

The judgment is affirmed.

Kane, J., and Miller, J., concurred.

---

[7]The notice of appeal was filed on June 8, 1978.