JANET H. SONDIN, Plaintiff-Appellant, *v.* RALPH M. BERNSTEIN, Adm'r of the Estate of Robert Nickle, *et al.,* Defendants-Appellees.

First District (4th Division)   No. 83—1405

Opinion filed June 28, 1984.—Rehearing denied September 5, 1984.

Robert T. Fasic, of Chicago, for appellant.

Ralph M. Bernstein, *pro se*, Melvin J. Cole, and Barry A. Feinberg, guardian *ad litem*, all of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

Robert Nickle, the decedent, and Janet H. Sondin were joint tenants in a parcel of property located at 1740 North Wells Street in Chicago. When Nickle died, Sondin contended that she was the sole surviving joint tenant of the property. Ralph M. Bernstein, as administrator of the estate of Robert Nickle (the Estate), contended that the joint tenancy had been severed and that the Estate held a one-half interest in the property as tenant in common. The trial court on a motion for judgment on the pleadings found that the joint tenancy had indeed been severed. Originally this action had been brought by Sondin to quiet title, but by agreement of the parties the property was sold and the proceeds placed in escrow pending the resolution of this dispute between the parties. The trial court's judgment had the effect of granting a judgment in favor of the Estate for one-half of the proceeds. Sondin appeals.

Sondin and Nickle were married in 1947. They acquired the Wells Street property in 1953. The property was a three-story masonry building that was rehabilitated by Sondin and Nickle into two separate sections. The first floor and basement were utilized by Nickle as an architectural studio while the second and third floors were joined and used as the family residence. During the course of their marriage the couple also acquired as joint tenants two additional parcels of property. The couple continued to occupy the Wells Street property as their marital home until they became estranged and Sondin filed for divorce in February 1966. Thereafter, Sondin and her children occupied the second and third floors while Nickle continued to occupy the basement and first floors for business purposes. On November 27, 1967, the parties entered into a property settlement agreement which was subsequently incorporated and merged into their 1968 divorce judgment.

The provisions of the property settlement agreement provide the principal focus for the issue of whether the joint tenancy was severed. The property settlement agreement provided that Nickle would have the continued right to use the basement and first floor for business purposes only and that as alimony he would pay the mortgage and utilities. It also provided that the proceeds from any rental of the property were to be applied to the expenses of the building and that if

Sondin moved from the property her alimony was to be waived. Most pertinent to this appeal is the clause in the agreement that provided:

> "In the event of the sale of 1740 North Wells building the parties shall share equally in any profits of said sale, even though the wife may have remarried or moved."

Further, Sondin was to have conveyed to Nickle all of her interests in two additional parcels of real estate that the couple had acquired as joint tenants during the marriage.

The trial court held that in considering the divorce documents in their entirety, the parties demonstrated the intent to terminate the joint tenancy and that the property settlement agreement and court order acted, at the least, to sever the unity of possession. On appeal, Sondin contends that the property settlement agreement did not demonstrate any intent by the parties to sever the joint tenancy and that the trial court erred in finding a severance as a result of the termination of the unity of possession. In response, the Estate contends that any property settlement agreement contained in a divorce judgment automatically operates to sever joint tenancy as a matter of law. Further, the Estate contends that absent any adoption of this *per se* severance rule, the instant property settlement agreement contained provisions clearly inconsistent with the continuation of joint tenancy and demonstrated an intent to sever the joint tenancy. Alternatively, the Estate contends that the property settlement agreement was a contract and that under the terms of the contract, if the real estate was sold, then half the proceeds were to go to the Estate.

Relevant to the first two issues is the general rule that an agreement between joint tenants to hold as tenants in common will sever an existing joint tenancy and such agreement may be inferred from the manner in which the parties deal with the property. Thus the joint tenancy may be terminated by mutual agreement or, as is pertinent to the instant case, by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interest as belonging to them in common. (*Duncan v. Suhy* (1941), 378 Ill. 104, 37 N.E.2d 826.) For an agreement to terminate a joint tenancy the parties must enter into either an agreement which expressly severs the joint tenancy or a valid contract containing provisions clearly inconsistent with the continuation of the joint tenancy. *First United Presbyterian Church v. Christenson* (1975), 33 Ill. App. 3d 928, 339 N.E.2d 15, *rev'd on other grounds* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.

Further, it is generally held that in a joint tenancy there are four unities: unity of interest; unity of title; unity of time; and unity of possession; or, in other words, joint tenants have one and the same

interest, occurring by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession. (*Duncan v. Suhy* (1941), 378 Ill. 104, 109, 37 N.E.2d 826.) A joint tenancy will be severed when one or more of the four unities is destroyed. *Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 177 N.E.2d 194.

The first issue on appeal is whether any property settlement agreement contained in a divorce decree automatically operates to sever a joint tenancy as a matter of law. In support of this position, the Estate cites to what it calls "a developing modern trend" which maintains that two persons suffering from domestic difficulties would not intentionally enter into an agreement that would leave a bulk of his or her estate to the other. (See *Wardlow v. Pozzi* (1959), 170 Cal. App. 2d 208, 338 P.2d 564; *Mann v. Bradley* (1975), 188 Colo. 392, 535 P.2d 213; *Rich v. Silver* (1964), 226 Cal. App. 2d 60, 37 Cal. Rptr. 749.) However, the Illinois Appellate Court has addressed this very issue and has held: "we think the better view is the rule which prevails in other jurisdictions: a divorce decree alone does not effect a severance of joint tenancy real estate." *In re Estate of Woodshank* (1975), 27 Ill. App. 3d 444, 447, 325 N.E.2d 686; see also *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 395 N.E.2d 1209; *Nichols v. Nichols* (1969), 43 Wis. 2d 346, 168 N.W.2d 876; *Poulson v. Poulson* (1950), 145 Me. 15, 70 A.2d 868; *Witzel v. Witzel* (Wyo. 1963), 386 P.2d 103; *Gwin v. Camp* (1938), 25 Cal. App. 2d 10, 76 P.2d 160.

■ The rationale articulated by the *Woodshank* court was that divorce terminates those property rights and interests not actually vested, of divorced persons in the property of each other which are dependent upon the marriage relationship such as dower, curtesy, and rights of inheritance under the statute of descent, but that property rights of a husband and wife which exist independently of the marriage survive the divorce judgment. The right of survivorship of a joint tenant does not arise out of the marriage relationship. (*Duncan v. Suhy* (1941), 378 Ill. 104, 37 N.E.2d 826.) We believe that the rationale used in *Woodshank* is fully applicable and persuasive in the instant matter. Joint tenancy does not arise out of the marriage relationship and absent either an express intent to sever or actions inconsistent with the continuation of joint tenancy, a divorce judgment alone will not sever joint tenancy. Therefore, this argument in support of severance fails.

■ The next issue is whether this particular property settlement agreement contained provisions clearly inconsistent with the continuation of a joint tenancy and demonstrated an intent to sever. Sondin argues that no such intent is present in that the law and the facts in

*Duncan v. Suhy* (1941), 378 Ill. 104, 37 N.E.2d 826, directly correspond to the instant matter and accordingly control its resolution. In *Duncan*, the issue before the court was the construction and application of the parties' post-nuptial agreement that provided for the distribution of property due to irreconcilable mutual differences that arose between them. Of particular interest was the provision that referred to the marital home, which was owned by the parties in joint tenancy. Specifically in that provision, the parties agreed to retain their respective one-half interest in the marital home and, if the property should be sold, the net proceeds were to be divided equally between the parties. Subsequent to the agreement, but prior to any sale of the subject property, the wife died and her heirs brought an action for a partition of the real estate, alleging that the post-nuptial agreement severed the joint tenancy and that they owned a one-half interest as tenants in common. The matter was resolved by the Illinois Supreme Court, wherein they concluded that the agreement did not sever the joint tenancy and that the disputed provision did no more than state the shares of each party in the property and that those shares were to remain equal. The court went on to find that the provision stating that in case the property was sold then each should share equally in the proceeds merely accorded with the rights of each on the sale of property held in joint tenancy. Of particular importance to the *Duncan* court was the fact that the agreement contained no language to convey the property or any part thereof to either of the parties, nor to sell the same.

We find *Duncan* to be most persuasive. In the case at bar, the language of the provision regarding the sale of the marital home is very similar to the language of the provision in *Duncan*. Except for the reference to retaining their one-half interest, which the court in *Duncan* determined to state only the respective shares of each party, the language is virtually identical. Therefore, as interpreted by the Illinois Supreme Court in *Duncan*, such language merely accords with the rights of each party on the sale of property held in joint tenancy. The provision neither expressly severs joint tenancy nor contains any language inconsistent with the continuation of joint tenancy. Of equal importance to this court is the fact that the language of this provision only provides for a conditional future sale, which we believe is insufficient evidence of an intent to sever joint tenancy. There must be more of a definite obligation to sell or convey in order to sever a joint tenancy.

An additional issue regarding whether the property settlement agreement operated to sever the joint tenancy involves the trial

court's determination that an intent to sever could be found from the alleged severance of the unity of possession. The trial court concluded that the parties' agreement to arrange for exclusive possession of a section of the property for each party severed the unity of possession. We disagree. It is well settled in Illinois that joint tenants may contract with each other concerning the use of the common property, such as for the exclusive use of the property by one of them. (*Tindall v. Yeats* (1946), 392 Ill. 502, 64 N.E.2d 903; see 48A C.J.S. *Joint Tenancy* sec. 27, (1981).) They may, by contract, provide for the exclusive possession of one for such time as may be agreed upon by them. (*Curtis v. Swearingen* (1826), 1 Ill. (Breese) 207.) In the instant case, the parties' contracting for exclusive possession was not an indication of an intent to sever the joint tenancy, and it should not have been a factor in the trial court's determination.

In the instant action, we have found that neither the property settlement nor the court order operated to sever the joint tenancy. However, based on a contract theory that was originally proposed by the Estate at the trial court but was not addressed by the court, we find that the Estate is entitled to one-half of the proceeds from the sale of the marital home.

Under this contract theory, the Estate contends that the property settlement agreement is an enforceable contract, the terms of which survive the death of Nickle. In response, Sondin argues that the contract was a personal one between herself and Nickle and that the terms therein were enforceable only during the parties' lives. Thus, at Nickle's death the contract did not pass any interests or rights to his heirs but rather the right of survivorship became operative and she held sole title to the property as a surviving joint tenant.

When an agreement by divorcing spouses concerning property rights is approved by the court and incorporated into the divorce judgment, it becomes merged in the judgment and the rights of the parties thereafter rest upon the judgment. (*Brandel v. Brandel* (1966), 69 Ill. App. 2d 264, 216 N.E.2d 21.) In interpreting such an agreement, the courts apply normal rules for construction of contracts. (*In re Estate of Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366.) Accordingly, the object in so doing is to give effect to the apparent intent of the court (*Pope v. Pope* (1972), 7 Ill. App. 3d 935, 289 N.E.2d 9) and the intention of the parties. (*In re Estate of Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366.) When no ambiguity exists on the face of the judgment, the intent of the parties will be determined only from the language of the instrument itself. (*Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.) Thus, the prop-

erty settlement agreement defines the nature and extent of the rights and the liabilities of the parties with respect to the marital property, and the trial court is required to direct performance of those obligations under the judgment so as to fully execute its terms. (*In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 395 N.E.2d 1209.) Furthermore, property issues survive the death of a party where the divorce judgment is entered prior to the party's death. *In re Marriage of Garlinski* (1981), 99 Ill. App. 3d 107, 425 N.E.2d 22.

In *Coleman*, the divorcing parties set forth their understanding in a property settlement agreement that merged into their divorce judgment. The agreement provided that the parties were to exchange certain property for a fixed sum of money. Prior to completing performance of the terms of the agreement, the husband died. The court held that the intent of the parties was clear from the agreement and that its terms were to be fully executed. In *Garlinski*, the trial court entered an order of dissolution, but prior to determination of the property rights the husband died. The court held that the husband's death did not abate the property issues and that the executor was to substitute as a party in a hearing on the property rights.

■ In the instant case, the divorce judgment incorporated the property settlement agreement and was entered by the trial court 12 years prior to Nickle's death. Each party has been entitled to enforce the agreement at all times since the entry of the judgment. (See *Cunningham v. Lawrence* (1959), 16 Ill. 2d 201, 157 N.E.2d 50.) The language of the agreement unambiguously stated that "in the event of the sale \*\*\* the parties share equally in any profits of said sale \*\*\*." This is an enforceable term of a valid contract, and based on *Garlinski*, the provisions regarding the property issues survive the death of Nickle. Further, Sondin has failed to cite any contrary authority to indicate why the property settlement agreement should not survive Nickle's death. Accordingly, the Estate is entitled to one-half of the proceeds from the sale of 1740 North Wells that have been held in escrow.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed and remanded.

JOHNSON and ROMITI, JJ., concur.