*In re* MARRIAGE OF JANICE R. DOWTY, Petitioner, and RONALD L. DOWTY, Respondent (David H. Keay, Ex'r of the Estate of Janice R. Dowty, Deceased, Plaintiff-Appellant; Ronald L. Dowty, Defendant-Appellee).

Second District   No. 2—85—0430

Opinion filed August 20, 1986.

David H. Keay, *pro se*, and Paul G. Brinkman, both of Wheaton, for appellant.

Ronald L. Dowty, of Wheaton, for appellee, *pro se*.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, David H. Keay, administrator of the estate of Janice R. Dowty, deceased, appeals from an order of the circuit court which denied plaintiff's petition to enforce a judgment for dissolution of marriage. By the petition, plaintiff sought a declaration that decedent's estate was entitled to a one-half interest in real estate held in joint tenancy at the time of her death by decedent and her former husband, defendant Ronald L. Dowty. Plaintiff contends that the judgment of dissolution, and the property settlement agreement of the parties incorporated therein, severed the joint tenancy at the time of the dissolution of the marriage and that the estate is entitled to enforce the terms of the dissolution judgment and the contractual rights of decedent, which survived her death. Defendant contends that the joint tenancy was not thus severed and, as surviving joint tenant, he became owner of all interest in the real estate at the time of Janice Dowty's death and is not required to sell it to carry out the terms of the settlement agreement.

The marriage was dissolved in an uncontested hearing held May 15, 1981. A written property settlement agreement which had been entered into by the parties was offered in evidence with a request that it be incorporated into the dissolution judgment. Its terms provided that the agreement was in settlement of all property rights between them, including all rights or claims either party may have in any property owned by the other. As relevant to the real estate in issue in this case, which was their former family home, the agreement provided:

> "2. That the husband agrees to pay to the wife and the wife hereby agrees to accept the sum of $300.00 per month for a period of 30 months, commencing on the 1st day of the first month

following the entry of Judgment of Dissolution. If the marital residence is not sold at the end of 30 months, payments will continue until the home is sold. However, husband shall be released from the obligation of payment as to any payment falling due subsequent to the

a) death of wife.

b) remarriage of wife.

3. That upon the sale of the marital residence, the husband and wife shall share the proceeds of such sale equally subject to the following:

a) Husband will receive credit for all principal payments made to reduce the mortgage, as of the date of Judgment.

b) Wife shall receive 50% of the value of the Retirement Trust after tax consequences, as of the date of Judgment, which amount is Three Thousand Three Hundred & Eighty-Two ($3,382.00) Dollars.

c) Said credits shall be made at the time of closing of the marital residence.

\* \* \*

6. That husband shall pay $600.00 towards wife's attorney's fees—to be paid at the time of closing of the marital property—and all court costs.

\*\*\*

8. That all other property rights of the parties have been settled by and between the parties and none have been left unsettled."

The agreement also provided that each party waived and released all right or interest either party may have in any real or personal property of the other, whether by way of joint tenancy, homestead, dower, or other interest.

Janice Dowty was the only witness to testify at the dissolution hearing and was examined by both her counsel and counsel for her husband, defendant herein. Mrs. Dowty identified the property agreement and its signatures, stating it was the agreement she had made with her husband to resolve their property matters. The trial judge interposed an inquiry at that point, as follows:

"The Court: In connection with the separation agreement, I have one problem with the reading thereof, and that is where is the direction that the property be sold? It is implied, but I don't know if it is precisely stated.

Mr. Kelsey [wife's attorney]: Judge, you are correct. It is on the market at the present time, and maybe we can include that as an

oral agreement.

The Court: It is the intention of the parties that the property be sold as soon as reasonably possible?

Mr. Kelsey: Absolutely. It is on the market right now.

Mr. Felice [husband's attorney]: Yes, your Honor; that is my understanding, too.

Mr. Kelsey: I will put that in the judgment, your Honor, too."

The property agreement was thereupon admitted in evidence by the trial court with directions that it be incorporated into the judgment of dissolution. Part of the difficulty which brings about this appeal arose because counsel failed to place in the written judgment order subsequently entered by the court any reference to the oral agreement earlier noted relating to the sale of the real estate then held in joint tenancy by the parties.

On March 22, 1982, the wife died and the husband took the unsold subject real estate off the market. In June 1983, plaintiff, as administrator of the wife's estate, brought this action seeking to enforce the judgment of dissolution by requiring the husband to list the property for sale and, after sale, to distribute the proceeds in accordance with the terms of the settlement agreement. After hearings, the trial court found that the judgment of dissolution and property settlement agreement incorporated in it were unambiguous and that the subject property remained in joint tenancy at the time of Janice Dowty's death and, thereafter, was the property of Ronald Dowty, as surviving joint tenant. Plaintiff's petition was denied and this appeal followed.

■■■ The parties correctly agree that a judgment for dissolution of a marriage will not alone cause severance of a joint tenancy in real estate. (See, *e.g., In re Estate of Woodshank* (1975), 27 Ill. App. 3d 444, 447, 325 N.E.2d 686.) The right of survivorship of a joint tenant does not arise out of the marriage relationship and, absent either an express intent to sever or conduct inconsistent with the continuation of the joint tenancy, it will continue after a dissolution of the marriage of joint tenants. (*Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 706, 467 N.E.2d 926, *appeal denied* (1984), 101 Ill. 2d 587.) However, a joint tenancy will be severed when one or more of the four unities of interest, title, time or possession is destroyed. (*Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 55, 177 N.E.2d 194.) An agreement between joint tenants to hold property as tenants in common will sever an existing joint tenancy, and may be inferred from the way in which the parties deal with the property when they treat their interest as belonging to them in common. *Duncan v. Suhy* (1941), 378 Ill. 104, 109, 37 N.E.2d 826.

■■ It has also been established that where a property settlement

agreement between spouses whose marriage is being dissolved has been approved by the court and incorporated in the judgment of dissolution, it becomes merged in the judgment and the rights of the parties thereafter rest on the judgment. (*Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 708, 467 N.E.2d 926; *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 399, 395 N.E.2d 1209.) The trial court is required in such circumstances to direct performance of the obligations under the judgment so as to fully execute its terms. *Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 709, 467 N.E.2d 926.

■ Although not precisely drawn insofar as it related to the sale of the subject property, the property settlement agreement of the parties, as supplemented by their oral agreement at the dissolution hearing, clearly demonstrates their intent to sell it as soon as possible. The property was, indeed, then on the market, and was only withdrawn from sale by the husband at the untimely death of the wife. The other terms of their agreement depended for execution, in large part, upon the sale of the property; that was one condition for cessation of maintenance by the husband and also for distribution between the parties of their interests in the home, the wife's share of the retirement trust funds and payment of her attorney fees. As the property has not yet been sold, and the husband disclaims any requirement that he do so, he still retains these assets which by their agreement and the dissolution judgment were allocated to the wife.

Language in a marital property settlement agreement which provides only for the possible or contingent future sale of jointly held real estate is insufficient evidence of an intent to sever the joint tenancy. (*Duncan v. Suhy* (1941), 378 Ill. 104, 111, 37 N.E.2d 826; *Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 707, 467 N.E.2d 926, *appeal denied* (1984), 101 Ill. 2d 587.) Where, however, it may be seen from the language of the judgment, and the property agreement incorporated therein, together with the matters disclosed in the transcript of the dissolution hearing, that the parties intended a division of the property, the joint tenancy will have been severed. In *Thomas v. Johnson* (1973), 12 Ill. App. 3d 302, 305, 297 N.E.2d 712, the divorce decree directed that all real estate of the parties be sold and the proceeds divided equally between them. One party died before sale of certain real estate and it was claimed by the surviving joint tenant. In rejecting that claim, this court concluded the parties intended to divide their property, not merely state their relative rights in it, and that intention to partition was sufficient to destroy the unity of joint-tenancy title in which it was held at the time of the divorce.

We reach the same conclusion in the present case. It is bolstered by

the oral agreement made at the time of the dissolution hearing after the judge inquired as to a direction in the written agreement for the sale of the property. It is apparent from the transcript of that proceeding that the court was satisfied by the responses of the attorneys that it was to be promptly sold. It is equally apparent from the agreement of the parties that such sale was intended by them to be the key factor necessary to the division of all of their property interests.

In a hearing on plaintiff's petition, defendant described his negotiations with his wife prior to entering into the agreement. He there stated they had agreed to the sale price of the home and that the proceeds would be distributed equally between them, as reflected in the agreement. Defendant also testified that it was his understanding the property was to remain in joint tenancy. The latter testimony was apparently offered to show the intent of the parties if the trial court considered their agreement to be ambiguous; however, as the court found it to be unambiguous, we must presume the court did not consider that self-serving conclusion of defendant who did not, in any event, state that was also his deceased wife's understanding of their agreement.

Plaintiff also contends that under a contract theory premised upon the property settlement agreement that the estate may enforce the terms of the agreement. We agree, finding that *Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 708, 467 N.E.2d 926, *appeal denied* (1984), 101 Ill. 2d 587, is dispositive of that issue. (See also *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 400, 395 N.E.2d 1209.) The agreement between the parties fully defined the nature and extent of their rights and liabilities with respect to the marital property and the trial court is obliged to execute the terms of its judgment. These property issues survive the death of a party where the judgment was entered prior to the death. (*In re Marriage of Garlinski* (1981), 99 Ill. App. 3d 107, 110, 425 N.E.2d 22.) There can be no question here that the wife was entitled during her life following the dissolution to enforce the judgment and to require the sale and distribution of the proceeds in accordance with the terms of the judgment. (See *Cunningham v. Lawrence* (1959), 16 Ill. 2d 201, 157 N.E.2d 50.) The estate may now do so in her stead.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LINDBERG and STROUSE, JJ., concur.