*In re* MARRIAGE OF HAROLD D. SHERRICK, Petitioner-Appellant, and PHYLLIS J. HARWOOD, f/k/a Phyllis J. Sherrick, Respondent-Appellee.

Fourth District   No. 4—90—0553

Opinion filed June 5, 1991.

McCULLOUGH, J., specially concurring.

F. Donald Heck, Jr., of Pollock, Ennis & Heck, of Quincy, for appellant.

Donald R. Schuering, of Goehl & Schuering, of Quincy, for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

The circuit court of Adams County, following a petition for direction, determined that maintenance provided in the 1983 judgment for dissolution of marriage was, in fact, maintenance in gross and, thus, not terminated by the remarriage of the respondent Phyllis Harwood, formerly Phyllis Sherrick. Petitioner Harold Sherrick, who had caused the petition for direction to be filed, now appeals. The trial court refused to consider respondent's petition to modify.

The question on appeal is whether the trial court should have gone beyond the maintenance provision in the dissolution judgment to determine the obligation of the petitioner. The pertinent portion of the 1983 dissolution judgment provides, in relevant part:

> "6. That Petitioner has sufficient funds to support Respondent and the minor child of the parties. The Court further finds that Petitioner is the beneficiary of the Martin Sherrick Trust administered by the Mercantile Trust and Savings Bank of Quincy, Illinois.
>
> 7. That the Parties are owners of marital and nonmarital property and have reached a property settlement agreement between themselves."

The decretory portion of the judgment provided in part:

> "C. That Petitioner is to pay Respondent $1,000.00 per month and assign to Respondent his interest in the Martin Sherrick Trust as maintenance."

Sections 504(b) and 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) provide in part:

> "Maintenance. ***

* * *

(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors ***." Ill. Rev. Stat. 1983, ch. 40, par. 504(b).

"Modification and Termination of Provisions for Maintenance, Support and Property Disposition. ***

(b) Unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Ill. Rev. Stat. 1983, ch. 40, par. 501(b).

The evidence presented at the time of hearing on the petition for direction indicates the property settlement agreement, which evidently was prepared by the attorney for petitioner, was not signed by the parties, even though the judgment for dissolution referred to the agreement. The dissolution was granted on an uncontested basis, without respondent being present and without respondent having legal representation.

The petition for direction was filed by the petitioner on February 1, 1990. The hearing on the petition was held on March 22, 1990, and the evidence established that the Sherricks were married for 31 years. Respondent had helped with farming jobs, raised three children, did not work away from the farm, and had only three years' high school education. The youngest child, a girl, was supported by respondent for about one year after the dissolution.

Petitioner inherited 300 acres of farmland, but the parties had purchased an additional 150 and 80 acres sometime prior to the breakup of the marriage. The 80 acres, according to respondent, were paid for at least in part by her father. An additional 80 acres were purchased by the petitioner for $200,000 shortly before the marriage dissolution. The 150 and first 80 acres were evidently free of debt before the purchase of the second 80 acres. Respondent executed and delivered deeds conveying her interest in this real estate to petitioner. Petitioner also had a substantial interest in farm equipment, which was allegedly owned jointly with his son.

Based upon respondent's understanding that she would be assigned petitioner's life interest in a $40,000 trust with annual interest payments (which was created by petitioner's grandfather, Martin Sherrick) and would also receive $1,000 per month for her lifetime, she conveyed all marital property (except certain household items) to the petitioner. Petitioner's attorney did all legal work for the transfers and attended to respondent's execution of the various conveyances.

According to the testimony of respondent, she received a letter on March 14, 1983, from petitioner's attorney containing an unsigned property settlement agreement, which indicated that respondent would receive an assignment of annual interest payments from the Martin Sherrick Trust (Trust) and $1,000 a month for the rest of her life. This agreement and the envelope in which it was evidently mailed were tendered at the trial level and refused. This ruling followed petitioner's objection to its introduction.

Regardless of the ruling on the unsigned property settlement agreement, petitioner acknowledged in his testimony that the agreement contained the provisions he and respondent had agreed to at the time of the marriage dissolution, and that the agreement provided he was to pay respondent "One Thousand Dollars on the first day of each and every month for and during the life time of [respondent] as for support and as a property settlement."

■ Contracts need not always be in writing, but may be oral. (*Gaffney v. McCarron* (1977), 45 Ill. App. 3d 944, 946, 360 N.E.2d 508, 509.) Conduct, including an acceptance of benefits under a contract, may be sufficient to constitute a ratification binding on the party accepting the benefits as if the party had signed the contract. (*Bi-County Properties v. Wampler* (1978), 61 Ill. App. 3d 799, 805, 378 N.E.2d 311, 316; 12 Ill. L. & Prac. *Contracts* §45 (1983).) There is no question but that petitioner received the benefits of the agreement when all the marital assets were transferred to him. If, because of the lack of signature, no written agreement exists, there has been sufficient proof of an oral agreement consistent with the unsigned draft. Oral contracts are proved not only by what the parties have said, but by what they have done. *Feyreisen v. Sanchez* (1897), 70 Ill. App. 105; 12 Ill. L. & Prac. *Contracts* §14 (1983).

Respondent remarried on September 17, 1984, but petitioner continued to pay the $1,000 payments from the time of the dissolution until December 1989. Petitioner, who states he is having financial problems, further testified he "would still be paying it if [he] could."

In light of the wording of the judgment of dissolution and the existence of section 510(b) of the Act, we must determine if the trial court was required to find the $1,000 payments were simple maintenance and terminable on remarriage.

■■ Provisions of divorce judgments and property settlements are construed by applying the same rules as those governing construction of contracts. (*In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 584, 469 N.E.2d 381, 383.) Clear and unambiguous contractual terms must be given their ordinary and natural meaning. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539, 510 N.E.2d 1057, 1060.) The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases but by viewing each part in light of the others. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381, 370 N.E.2d 188, 191; see also *White v. White* (1978), 62 Ill. App. 3d 375, 378, 378 N.E.2d 1255, 1258.) The language of the judgment *appears* clear that respondent was receiving maintenance. However, when a property agreement is approved by the court and incorporated into a judgment of dissolution, the agreement is merged with the judgment and the parties' rights rest on the judgment. *In re Marriage of Morris* (1986), 147 Ill. App. 3d 380, 389, 497 N.E.2d 1173, 1178; *In re Marriage of Dowty* (1986), 146 Ill. App. 3d 675, 678-79, 496 N.E.2d 1252, 1255.

■■ In the present case, the judgment acknowledges that the parties, between themselves, had entered into a property settlement agreement. While the judgment does not specifically approve or incorporate the agreement, it does recognize terms of the agreement by awarding custody of the minor child of the parties to respondent, without providing child support, and provides that "Petitioner is to reimburse Respondent for any amount Respondent may be required to pay on any mortgage heretofore executed by the parties." These provisions indicate the property settlement agreement was considered as part of the judgment and require a finding that the agreement was merged with the judgment.

The evidence is clear the parties intended the $1,000 monthly payments to be something more than simple maintenance. Respondent conveyed away substantive marital property interests. In return for conveying her interest in all the farmland and farm equipment, she received only the interest income from the Trust and $1,000 monthly payments. If petitioner's position is correct in that the provided maintenance terminated on remarriage, it would seem reasonable to suggest the wording of paragraph C of the dissolution judgment would

also mandate that interest in the Trust was also maintenance and terminable on remarriage.

Because of reference in the judgment to the property settlement agreement, we conclude, even though the agreement was not included verbatim within the written judgment, that it was incorporated therein and the intent of the parties must be determined by considering the agreement. It then became incumbent upon the trial court to look behind the written judgment, to the actual agreement, to ascertain if the agreement did clearly dictate the nature of the maintenance provision. As stated in testimony by both petitioner and respondent, the agreement did clearly dictate a finding that payments to respondent were to be nonmodifiable $1,000 monthly payments until her death, rather than maintenance terminable by the provisions of section 510(b). Any other finding would be contrary to the manifest weight of the evidence. While this opinion appears in conflict with the provisions of section 510(b), we determine the facts in this case require the question of maintenance be answered by examining the judgment of dissolution and the agreement which was referred to and relied upon.

Because of our opinion, we find that it is not necessary to rule on the correctness of the trial court's refusal to consider respondent's petition to modify.

Affirmed.

SPITZ, J., concurs.

JUSTICE McCULLOUGH, specially concurring:
I agree with the result as set forth by the majority but believe that the trial court does have a responsibility to follow the provisions of section 502 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 502). That section provides that the parties may enter into a written or oral agreement containing provisions for the disposition of the property owned by them.

As set forth in the Act, section 502(b), the terms of the agreement are binding upon the court unless it finds, after considering certain matters, that the agreement is unconscionable. Ill. Rev. Stat. 1983, ch. 40, par. 502(b).

Subparagraph (d) provides:
"Unless the agreement provides to the contrary, its terms shall be set forth in the judgment, and the parties shall be ordered to perform under such terms, or if the agreement pro-

vides that its terms shall not be set forth in the judgment, the judgment shall identify the agreement and state that the court has approved its terms." Ill. Rev. Stat. 1983, ch. 40, par. 502(d).

Here, the trial court found that the parties had entered into an agreement. The court did not set forth the terms of the agreement in the judgment, nor did it identify the agreement and state that the court had approved its terms. If this had been done by the trial court, the disposition of this appeal would be readily made.

Many times, where children are not involved and the parties have reached a settlement, the trial court does not become involved. This case shows the importance of complying with the provisions of section 502.

Because the terms of the agreement were brought out in the evidence before the trial court on the petition for direction, this court can, in the interests of judicial economy, find that the agreement was not unconscionable and enforce the terms thereof.