Adolph R. ZULK, Plaintiff and Appellee,

v.

Gladys M. ZULK, Defendant and Appellant.

No. 17919.

Supreme Court of South Dakota.

Considered on Briefs on Nov. 19, 1992.

Decided June 23, 1993.

Gary W. Conklin, Sioux Falls, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

PER CURIAM.

Gladys Zulk (Gladys) appeals a trial court order dissolving a joint tenancy in real property and directing that the property be sold. We affirm.

## FACTS

Gladys and Adolph Zulk (Adolph) were married in 1967. The couple eventually acquired some land and built a home which they owned as joint tenants with rights of survivorship. Gladys and Adolph divorced in 1979. At that time, the two entered into a property settlement agreement later incorporated by reference in the judgment and decree of divorce. The agreement provides for a distribution of *all* of the parties' property and sets forth in pertinent part:

The real property owned by the parties consists of a home located at:

Lot Ten (10), Block Fifteen (15) Crestview Addition to City of Sioux Falls,

more commonly described as 4313 Hickory Hill Road, Sioux Falls, South Dakota. Both parties agree that (1) the house will be appraised by a qualified real estate appraiser with the cost of such appraisal being split equally between the parties; (2) the house will be listed for sale for a fair market value based on the appraisal but the parties agree that a price of Seventy Thousand Dollars ($70,000.00) must be accepted, if offered; (3) Gladys Zulk shall be allowed to stay in the house until it is sold and shall be responsible for all mortgage, utility and tax payments on the house until sold; (4) when the house is sold the equity shall be distributed equally between the parties, except that at the time the house is sold Adolph Zulk shall reimburse Gladys Zulk for 50 percent of the mortgage, insurance and tax payments on the house from October 15, 1979, until the house is sold.

\* \* \* \* \* \*

Each party expressly releases all right to share in the estate of the other party, or to serve as executor or administrator of the estate of the other party, except only as provided by Will or Codicil executed after the date of this Agreement.

At the time of the divorce, the parties received an offer to purchase their home in the amount of $67,000 but the offer was not accepted. Thereafter, the property was listed for sale on two separate occasions but was never sold. Gladys continued paying the mortgage and taxes on the home. In May 1988, Adolph granted a second mortgage on the property to a savings and loan association. The second mortgage remains unsatisfied.

In June 1988, Adolph married Shirley Zulk (Shirley). Adolph died in March 1990 and Shirley was appointed special administratrix of his estate. In order to pay the estate's liabilities and distribute any remaining property to Adolph's heirs, it became necessary to sell the estate's assets. In May 1990, Shirley filed a motion with the trial court to compel Gladys to deed a one-half tenancy in common interest in the real property at issue to Adolph's estate. Alternatively, Shirley sought Gladys's compliance with the terms of the parties' original property settlement agreement.

A hearing on Shirley's motion was held in January 1992. On February 26, 1992, the trial court entered its findings of fact, conclusions of law and order. The trial court found that Gladys and Adolph's execution of their property settlement agreement and Adolph's second mortgage of the property evinced the parties' intent to transform their joint tenancy into an ownership as tenants in common. The trial court went on to conclude: that the joint tenancy ownership of the property was destroyed; that Gladys and Adolph owned the property as tenants in common; and, that each party owned an undivided one-half interest in the property.

The trial court subsequently entered its order directing specific performance of the parties' original property settlement agreement. The order further provides that, in the event the property can not be sold for $70,000, the parties may agree to accept a lesser amount or apply to the court for authorization to accept a lesser amount. Gladys appeals.

## ISSUE

### DID THE TRIAL COURT ERR IN DETERMINING THAT THE PARTIES' JOINT TENANCY IN THE PROPERTY WAS TRANSFORMED INTO A TENANCY IN COMMON?

Gladys argues that the trial court erred in its determination that the parties' property settlement agreement and Adolph's second mortgage of the property transformed their joint tenancy into a tenancy in common interest. We disagree.

> A joint tenancy will be severed when one or more of the four unities of time, title, interest, or possession is destroyed.... Joint tenants can agree to hold as tenants in common and thus sever the joint tenancy. Such an agreement can be express or implied from conduct of the parties inconsistent with holding in joint tenancy.

*Estate of Dompke v. Dompke,* 186 Ill. App.3d 930, 134 Ill.Dec. 715, 717, 542 N.E.2d 1222, 1224 (1989) (citations omitted). *Accord, Estate of Asvitt,* 92 Cal.App.3d 348, 154 Cal.Rptr. 713 (1979).

> [A] judgment for dissolution of a marriage will not alone cause severance of a joint tenancy in real estate. The right of survivorship of a joint tenant does not arise out of the marriage relationship and, absent either an express intent to sever or conduct inconsistent with the continuation of the joint tenancy, it will continue after a dissolution of the marriage of joint tenants. However, a joint tenancy will be severed when one or more of the four unities of interest, title, time or possession is destroyed. An agreement between joint tenants to hold property as tenants in common will sever an existing joint tenancy, and may be inferred from the way in which the parties deal with the property when they treat their interest as belonging to them in common.

*In re Marriage of Dowty,* 146 Ill.App.3d 675, 100 Ill.Dec. 187, 190, 496 N.E.2d 1252, 1255 (1986) (citations omitted).

Principles similar to those outlined above were applied by this court in *Matter of Estate of Steffen,* 467 N.W.2d 490 (S.D.

1991). In *Steffen,* the decedent had been married twice. His first marriage ended in divorce. The divorce decree incorporated a property settlement agreement which provided in pertinent part:

> The [decedent] shall be allowed to live in [the marital] home until such time that he dies or voluntarily moves from the premises, but shall, during the period of time that he lives in said house, pay all mortgage payments, and taxes in a timely manner and shall further not allow this property to become in disrepair. Upon any of said events occurring, the home shall be immediately sold, with the net proceeds being divided equally between the parties. In the event [decedent's ex-wife] should predecease the [decedent], her ownership interest in this property shall remain as part of her estate.

*Steffen,* 467 N.W.2d at 491–92.

The decedent in *Steffen* remarried approximately two years after the divorce and died about two years after his remarriage. The funeral chapel subsequently filed suit against his estate and his ex-wife alleging the assets of the estate were insufficient to cover funeral expenses and that the ex-wife, as surviving joint tenant of the marital home, was obliged to pay those debts. Alternatively, the funeral chapel alleged the property settlement agreement had severed the parties' joint tenancy in the marital home and that a tenancy in common resulted. Therefore, the chapel contended an undivided one-half interest in the property was subject to the debts of the estate.

The trial court held in *Steffen* that the property settlement had severed the joint tenancy in the marital residence and created a tenancy in common interest. In reviewing that issue on appeal, we agreed with the trial court reasoning:

> [T]here is no material question of fact with respect to the ownership of the marital home: the property settlement agreement is dispositive. It states that "[i]n the event [the ex-wife] should predecease the [decedent] her ownership interest in this property shall remain as part of her

estate." *This provision is inconsistent with a joint tenancy* with right of survivorship because if [the ex-wife] predeceased the decedent and they were, in fact, joint tenants, decedent would become the sole owner of the property and [the ex-wife's] estate would not receive any interest. Clearly, the parties *intended to sever* their joint tenancy by the provisions of the property settlement.

*Steffen,* 467 N.W.2d at 493 (emphasis added) (citations omitted).

Although the property settlement in the instant case might not be as explicit on the severance question as was the one in *Steffen,* we are no less convinced of the parties intention to sever their joint tenancy in the property at issue. In *Dowty, supra,* divorcing spouses entered into a property settlement agreement requiring the sale of the marital residence and an equal division of the proceeds from the sale. The ex-wife died before consummation of the sale and the ex-husband took the property off the market. The ex-wife's estate brought suit to enforce the provisions of the settlement agreement and the trial court ruled that the property remained in joint tenancy and belonged to the ex-husband as the surviving joint tenant. The Illinois Appellate Court reversed holding:

> Language in a marital property settlement agreement which provides only for the possible or contingent future sale of jointly held real estate is insufficient evidence of an intent to sever the joint tenancy. Where, however, it may be seen from the language of the judgment, and the property agreement incorporated therein, together with the matters disclosed in the transcript of the dissolution hearing, that the parties intended a division of the property, the joint tenancy will have been severed. In Thomas v. Johnson (1973), 12 Ill.App.3d 302, 305, 297 N.E.2d 712, the divorce decree directed that all real estate of the parties be sold and the proceeds divided equally between them. One party died before sale of certain real estate and it was claimed by the surviving joint tenant. In rejecting that claim, this court concluded the parties intended to divide their property,

not merely state their relative rights in it, and that intention to partition was sufficient to destroy the unity of joint tenancy title in which it was held at the time of the divorce.

> We reach the same conclusion in the present case.

*Dowty,* 100 Ill.Dec. at 190–91, 496 N.E.2d at 1255–56 (citations omitted).

Similarly, in *Asvitt, supra,* divorcing spouses entered into a property settlement agreement requiring the sale of their jointly held marital home. The home was to be sold on the occurrence of any one of three specifically named events. The proceeds from the sale were to be divided equally. Like the settlement agreement in the instant case, the property settlement also included a provision wherein each spouse waived their interest in the estate of the other. In addressing the issue of whether the settlement agreement severed the joint tenancy regardless of the death of one of the parties before the sale of the property, the California court reasoned:

> Here, by the property settlement agreement incorporated into the dissolution agreement, the parties terminated a joint tenancy. An agreement to sever operates to effect a severance, and the intervening death of one of the joint tenants will not defeat the severance even though the agreement is not performed. The former wife argues that there is insufficient indication of an intent to terminate the joint tenancy, as Article Fourth of the subsequently executed 1974 will [of the former husband] specifically referred to joint tenancy property. However, [the former husband's] subsequent attempt to force a sale of the home in 1976 when the youngest child reached 18, clearly indicates that he regarded the family home as community property. The trial court properly and reasonably construed paragraph 10 of the property settlement agreement … pertaining to the sale of the home as one intended to permit the wife and minor children to remain in the family home until one of the three specified conditions occurred. This interpretation is also supported by

paragraphs 2, 3 and 4 of the agreement ... which indicate that the agreement was to settle all of the property rights of the parties, as well as paragraph 13 of the property settlement agreement (pertaining to custody), which expressly refers to the parties' love and affection for their children and concern for the best interest of their children. Thus, the language of the property settlement agreement and the subsequent conduct of the parties fully supports the trial court's conclusion that the joint tenancy was terminated at the time of the dissolution. *Asvitt*, 154 Cal.Rptr. at 716 (citations and footnote omitted).

We reach a like conclusion in the instant case. The parties' property settlement agreement recites that its purpose was, "to adjust *and settle* the matter of property, financial affairs, and other related matters arising out of the action for the divorce between the parties." (emphasis added). Thus, the agreement maintains the same character of finality concerning the adjudication of property rights as the agreement in *Steffen, supra,* and the settlement agreements under scrutiny in *Dowty, supra,* and *Asvitt, supra.* In that regard, the settlement agreement divides all of the parties' marital property, both real and personal, in an equivalent fashion and also divides all of the parties' marital debts. Both parties acknowledged the fairness of the agreement, again giving some indication to the intention of finality with which they entered into it. Like the settlement agreements in both *Dowty* and *Asvitt,* the agreement in the instant case calls for a sale of the marital home and an equal division of the proceeds from the sale. Finally, like the agreement in *Asvitt,* the property settlement at issue here includes a provision wherein each party waives *all* interest in the estate of the other. Clearly this provision is inconsistent with a joint tenancy with rights of survivorship because, under a joint tenancy, Gladys would become the sole owner of the marital home and thereby deprive Adolph's estate of Adolph's half interest in any proceeds from the sale of the residence. Based upon these provisions of the settlement agreement, we find adequate support for the trial court's determination that Adolph and Gladys' joint tenancy in the marital home was terminated at the time of their divorce.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.