MARTHA WARD MILLER, Plaintiff, v. GLENN E. MILLER, Defendant-Appellee (Ward Anthony Miller, Appellant).

First District (5th Division) No. 84—1832

Opinion filed November 20, 1987.

Sheri H. Mechlenburg, of McDermott, Will & Emery, and Chicago Volunteer Legal Services, both of Chicago, for appellant.

Muller Davis and Muriel Kuhs, both of Jones, Baer & Davis, of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

The trial court dismissed the petition of Ward Anthony Miller, appellant, to compel his father, Glenn E. Miller, defendant-appellee, to comply with his property settlement agreement and the decree of divorce to pay Ward's college education expenses. Ward appeals. We reverse.

On May 23, 1967, Martha Ward Miller filed a complaint against her husband, Glenn E. Miller, for separate maintenance, which was subsequently amended to a complaint for divorce. The complaint alleged, *inter alia*, that one child, Ward Anthony Miller, was born of the parties and the complaint prayed that Martha be awarded the custody, maintenance and education of Ward and that Glenn be required to pay Martha child support for Ward. Martha and Glenn entered into a property settlement agreement on January 16, 1968. The agreement stated in part:

> "Glenn E. Miller shall pay for the expenses including the tuition incident to the attendance in college by the child of the parties, Ward Anthony [Miller], even though he may have attained the age of majority ***."

This provision of the property settlement agreement was incorporated into a divorce decree which was entered in the case on January 17, 1968. The divorce decree further provided that Glenn pay alimony to Martha and child support for Ward.

It appears that throughout the years after the January 17, 1968, divorce decree, Martha and Glenn were in constant post-judgment litigation to compel Glenn's compliance with the alimony and child support provisions of the decree. On May 18, 1979, over 10 years after the entry of the divorce decree but only one week before Ward's 18th

birthday, Glenn and Martha entered into a second agreement, which they labeled "amendment to the Property Settlement Agreement." At that time Ward was and since June 1978 had been attending Central YMCA College. This May 18, 1979, agreement significantly stated:

"The parties hereto entered into [a] *** Property Settlement Agreement *** which was incorporated in a Decree for Divorce ***.

*Wife and Husband have filed several Post-Decree Petitions relating to non-payment and abatement of alimony and child support*, denial of visitation rights with the parties' child *and payment of college education expenses for WARD MILLER*.
* * *

1. The parties agree that it is in their best interests to resolve, once and for all, all differences between them concerning the [Property] Settlement Agreement and to put an end to the necessity for Post Decree Petitions.

2. Husband [Glenn E. Miller] agrees to pay wife [Martha Ward Miller] the sum of Eleven Thousand Five Hundred Fifty Dollars ($11,550.00) at the time of execution of this Amendment to Property Settlement Agreement as and for full and complete settlement of all claims for alimony and child support which wife now has or may hereafter have against husband in full and final settlement of the husband's obligation to support and maintain wife and pay child support. Wife hereby acknowledges that she has received all child support payments to and including May 25, 1979.

3. Both parties hereby waive all claims to alimony and support from the other party whether past, present or future except as set forth herein.

4. Wife agrees not to seek any modification of the provisions of the oral Property Settlement Agreement and this Amendment thereto with respect to alimony or maintenance.

5. *Wife agrees that after WARD MILLER reaches the age of majority on May 25, 1979, she will not seek to enforce, on his behalf, any of his rights under the order of Court of January 17, 1968, and the oral Property Settlement Agreement between the parties.*" (Emphasis added.)

It is significant that this post-divorce decree amendment to Martha and Glenn's 1968 agreement was entered into on May 18, 1979, one week before their son Ward reached majority. It is also significant that this May 18, 1979, post-divorce decree agreement did not mention Glenn's obligation in the 1968 agreement and divorce decree to

pay Ward's college expenses. Even more importantly, the May 18, 1979, post-divorce decree agreement provided that Martha would not seek to enforce on Ward's behalf Ward's right in the 1968 divorce decree to have Glenn pay Ward's college expenses.

It is noteworthy that the $11,550 paid Martha by Glenn under the 1979 post-divorce decree agreement was for *"full and complete settlement of all claims for alimony and child support \*\*\* and final settlement of the husband's obligation to support and maintain wife and pay child support."* The $11,550 was not for the costs of Ward's college education. Moreover, it is of no small concern that this May 18, 1979, post-divorce decree agreement between Martha and Glenn was not presented to a judge in the divorce case for judicial approval or for incorporation as an amendment to or modification of the 1968 divorce decree. Thus, the question presented in the case at bar, as the question was similarly presented in *Hartman v. Hartman* (1980), 89 Ill. App. 3d 969, 972, 42 N.E.2d 711, is whether the parents were "looking after their own interests, [because] the interest of this child may be seriously neglected."

In *Hartman,* the husband and wife entered into a property settlement agreement which waived alimony. The agreement was later incorporated in a divorce decree, which barred alimony but granted the wife $1,000-per-month child support. Two years later, the husband and wife agreed to a $500-per-month reduction of the child support payment. The agreement further provided $500 monthly alimony payments to the wife by the husband. The husband presented the agreement to the court, without notice to the wife, and the divorce decree was modified in accordance with the new agreement. Thereafter, the wife filed a petition to vacate the modified divorce decree and the petition was denied. The wife contended in the trial court and on appeal that she was coerced by the husband into signing the agreement for modification of the divorce decree. She urged that she desired to remove their minor child from Illinois and that her husband agreed not to object to the removal if she would agree to the aforesaid modification. The husband did not apprise the trial judge of these facts when he presented the agreement to modify the divorce decree. This court stated that these facts, if proved, would establish a fraud by the husband upon the court, and in reversing the denial of the wife's petition to vacate the modified divorce decree, the court stated:

> "Should there be any further proceedings between these parties we draw the trial court's attention to section 506 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 506), which provides for the representation of

a child by a court appointed attorney. *It is clear that the parents here are looking after only their own interests and the interest of this child may be seriously neglected.*" (Emphasis added.) *Hartman v. Hartman* (1980), 89 Ill. App. 3d, 969, 972, 412 N.E.2d 711.

Section 506 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 506), to which the court referred in *Hartman*, provides:

"The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation. *** The court shall enter an order for costs, fees and disbursements in favor of the child's attorney ***. The order shall be made against either or both parents, or against the child's separate estate."

Although this statute does not provide for the appointment of an attorney to represent the interest of a child with respect to payment of the child's college expenses, this statute does recognize that circumstances may exist in which a child's interest may need protection by an attorney "with respect to his support, custody and visitation" from the conflicting interest of the child's parents.

■■ In *Hartman*, it was discernible from the face of the post-divorce decree agreement that the husband's obligations thereunder were basically unchanged from his obligations under the original divorce decree, *i.e.*, a $1,000 monthly child support payment under the divorce decree and a $1,000 monthly payment—$500 child support and $500 alimony—under the post-divorce decree agreement. In *Hartman*, the post-divorce decree agreement revealed that the mother benefitted therefrom in the amount of $500 monthly, to the child's detriment in that same amount. Although it is undiscernible from the record before us whether the mother derived a benefit from the 1979 post-divorce decree agreement, it is clear that the mother's agreement therein was detrimental to her son, Ward. She agreed not to pursue against Ward's father Ward's right in the January 16, 1968, agreement and in the divorce decree to have his father pay his college expenses. Ward's mother attempted to terminate that part of the 1968 agreement and divorce decree which was for the benefit of her minor child. This, she was powerless to do, under the authority of *Joslyn v. Joslyn* (1944), 386 Ill. 387, 401, 54 N.E.2d, 475, wherein the supreme court held:

"[A]ppellant could not, had she desired so to do, which she did not, by consent or act, terminate that part of the contract which was entered into in part for the benefit of her minor chil-

dren. The contract was a valid one under seal. The record does not establish that she repudiated it and she could not do so, so far as the rights of her minor children are concerned."

This language of *Joslyn* answers Glenn's contention before us that the 1979 post-divorce decree agreement provided that Martha would "not seek to enforce, on [Ward's] behalf, any of his rights under the order of court of January 17, 1968, and the oral Property Settlement Agreement between the parties." Martha could not so validly agree and such purported agreement therefore did not bar Ward from pursuing his claim against his father for payment of his college expenses.

The colloquy between the trial court and Glenn's attorney on his presentation of Glenn's motion to dismiss Ward's motion to compel Glenn's compliance with his obligation to pay Ward's college expenses cleary reveals that the trial court recognized this principle enunciated in *Joslyn* and *Hartman v. Hartman* (1980), 89 Ill. App. 3d 969, 412 N.E.2d 711:

"[GLENN'S ATTORNEY]: [I] will deal with the Motion to Dismiss first. Our basic contention is Ward Miller, the child, the twenty-three year old child of the parties, does not have standing to bring this lawsuit. *** In May of 1979 these parties entered into a mandatory agreement to that [January 16, 1968] agreement. *** By virtue of this agreement, the mother waived her right to bring any further suit in her name or in her child's name for anything in this matter.

* * *

THE COURT: Counsel, is it your understanding by Paragraph 6 on page two, that the woman or the custodial parent is barred from ever coming into this court seeking an increase in support for the child?

[GLENN'S ATTORNEY]: I'm sorry, you are looking at the original agreement. I was referring to the Amended Agreement.

THE COURT: It has the same language in it. Paragraph 1 of the Amended Agreement you think that is barring her from coming in this court in a future time and asking for relief?

[GLENN'S ATTORNEY]: Yes, I do, your Honor.

THE COURT: It would be absolutely void. It is against public policy.

[GLENN'S ATTORNEY]: To come in and ask for relief?

THE COURT: Certainly. How can the parties agree to foreclose any additional support provisions or anything else for the benefit of the child?

[GLENN'S ATTORNEY]: At that point, the child was only one week short of eighteen so support and alimony was paid in full. Besides that in this agreement, there are cases, your Honor, that accept equitable estoppel as a reason.

THE COURT: Name me one case that—in the State of Illinois, that would allow the parties to agree not to come in to the post-decree as you put it, or the agreement is termed, and prevent them from seeking any additional relief ***?"

No such case was cited to the trial court and none has been cited to this court.

Ward graduated from high school in 1978. Glenn did not pay his college expenses, which resulted in Ward's attending Central YMCA College from June 1978 to June 1979 on a part-time basis even though he had been accepted as a full-time student at the University of Illinois. From September 1979 to June 1980 Ward attended Northwestern University. In September 1980 Ward transferred to the architectural program at the Illinois Institute of Technology (IIT), where he is presently pursuing a bachelor of arts degree. Ward attended IIT part time, maintained a 2.5 grade point average and was placed on the Dean's List in 1982. His tuition at IIT is currently overdue. He has been and will be denied readmission until his tuition is paid in full.

In 1984 Ward filed a motion in his parents' 1968 separate maintenance-divorce proceedings. Ward's motion requested that the court order his father, Glenn, to pay his college expenses pursuant to the provisions of the January 16, 1968, property settlement agreement between his mother and father and the January 17, 1968, divorce decree, which incorporated the January 16, 1968 property settlement agreement. Ward's motion asserted that his father refused to fulfill his financial obligations under the agreement and decree to pay for Ward's college education expenses. Ward's motion stated that his father's failure to pay his college expenses prevented him from completing college, that he had applied for scholarships and loans but received only a minimal grant of $1,350 from the Illinois State Scholarship Committee and that his tuition at IIT was overdue. The motion further stated that Ward's father was able to pay for Ward's college expenses, that Glenn presently and for the past 20 years had been employed as head librarian at the Institute for Psychoanalysis, and that his assets included a sailboat.

Glenn filed a response and a motion to dismiss Ward's motion which, *inter alia*, contended that he had completely fulfilled all of his financial obligations to Martha and Ward pursuant to the 1968 property settlement agreement and the divorce decree. In further re-

sponse to Ward's motion for Glenn's payment of his college expenses, Glenn urged that pursuant to the May 18, 1979, post-divorce decree agreement, Ward and his mother accepted $11,550 "as and for full and complete settlement for all claims for alimony and child support."

Glenn's motion to dismiss Ward's motion for college support contended that Ward did not have standing to present the motion because he was not a party in the proceedings in which the divorce decree was entered, that by the terms of the May 18, 1979, agreement Martha agreed not to seek to enforce Ward's rights to compel Glenn to pay Ward's college expenses under the 1968 agreement and divorce decree, and that Martha and Ward were estopped from so doing. Glenn contended that Martha waived her right in the May 18, 1979, agreement to bring any further action against him and that the 1979 agreement settled all issues between them.

On the other hand, Ward urged that the May 18, 1979, agreement between his parents affirmed that Glenn had the obligation to pay Ward's college expenses. Ward urged that the 1979 agreement recognized three separate obligations by Glenn: (1) Glenn's payment of Ward's college expenses; (2) Glenn's payment of Ward's child support; and (3) Glenn's payment of Martha's alimony. Ward posited that the 1979 post-divorce decree agreement settled only child support and alimony and left remaining Glenn's obligation to pay Ward's college expenses.

In spite of the foregoing and in expressly rejecting *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, and *Joslyn v. Joslyn* (1944), 386 Ill. 387, 54 N.E.2d 475, the trial court granted Glenn's motion to dismiss Ward's motion that Glenn be ordered to pay Ward's college expenses, stating:

> "THE COURT: In the *Joslyn* case, it was the attorney or the guardian *ad litem* that brought the action, is it not? I don't know what standing the child would have a right to sue in his own capacity for college expenses, as third party beneficiary, the motion to dismiss is sustained, no standing whatsoever."

The distinction on which the trial court relied in the case at bar, *i.e.*, "[i]n the *Joslyn* case, it was the attorney or the guardian *ad litem* that brought the action," in rejecting *Joslyn v. Joslyn* (1944), 386 Ill. 387, 54 N.E.2d 475, and in holding that Ward lacked standing to compel his father's compliance with his obligations under his 1968 agreement and divorce decree, was a distinction only in form. It was not a distinction of substance. Regarding the distinction in form of the identity of the litigating party, in *Palya v. Palya* (1980), 87 Ill. App. 3d 472, 409 N.E.2d 133, the minor children claimed that they

were not parties to a prior action between their parents in which their mother sought the value of coins which were in the father's possession for the children's benefit pursuant to a property settlement agreement incorporated in a divorce decree and therefore, the children contended, *res judicata* was inapplicable to the subsequent proceeding the children brought against their father for the value of the coins. The court rejected this nebulous nonsubstantive distinction, denied the children's claim and held, "it is a maxim that in an equitable action, the court looks to substance and not form." 87 Ill. App. 3d at 474.

In the May 18, 1979, agreement Martha attempted to "bargain away" Glenn's contractual and court-decreed obligation to pay Ward's college expenses. We are aware of (1) the rule that a court order for child support payments may be modified only by another court order; and (2) the exception to that rule that a subsequent court order to modify a previous court order of child support payments is unnecessary when the parties, husband-father and wife-mother, agree between themselves to alter the child support payments. (*In re Marriage of Runge* (1981), 102 Ill. App. 3d 356, 360, 430 N E.2d 58.) The case at bar, however, does not involve a court order for child support. The case at bar involves a father's failure to comply with his January 16, 1968, agreement and his January 17, 1968, judicially decreed obligations to pay his child's college expenses.

As previously pointed out, (1) the Glenn-Martha May 18, 1979, post-divorce decree agreement was entered into seven days before their son Ward reached his majority; (2) there were post-divorce decree disagreements for over 10 years between Glenn and Martha concerning Glenn's nonpayment of alimony, maintenance and child support; (3) Ward was and had been enrolled in college for almost a year when the May 18, 1979, post-divorce decree agreement was entered into between Martha and Glenn; and (4) the May 18, 1979, post-divorce decree agreement provided that Martha would not seek to enforce Ward's rights against his father under the January 17, 1968, divorce decree. We further point out, (5) there is no indication that Ward benefited from or even knew of the May 18, 1979, agreement in which his mother received $11,550 from his father or (6) that Ward received any of the $11,550; (7) there is no indication that the May 18, 1979, agreement was presented to the trial court for the trial court's approval, adoption or incorporation in an amended divorce decree or (8) that the trial court would have approved of Martha's bargaining away Ward's right to compel his father to pay his college expenses; (9) the post-decree 1979 agreement did not confer upon Ward the

right to enforce it or the right to enforce the previous January 16, 1968, agreement or the January 17, 1968, divorce decree for the payment of his college education expenses by Glenn; and (10) there was no judicial determination of the fairness or appropriateness of the May 18, 1979, post-divorce decree agreement as to Ward.

The January 16, 1968, property settlement agreement between Martha and Glenn before their divorce, and the divorce decree itself, clearly obligated Glenn to pay Ward's college expenses. What is involved here is Martha's receipt of $11,550 from Glenn pursuant to the May 18, 1979, agreement and the purported cancellation of Glenn's obligation under the 1968 agreement and the divorce decree to pay Ward's college expenses. The 1979 agreement states: "[Martha] and [Glenn] have filed several Post Decree petitions relating to nonpayment and abatement of alimony and child support *** and payment of college expenses for Ward Miller." The agreement, however, does not address and is totally silent on Glenn's obligation to pay Ward's college expenses, which was clearly set forth in the January 16, 1968, property settlement agreement and the divorce decree. Alimony and child support are mentioned in the 1979 agreement in that Glenn therein agreed to pay Martha $11,550 "as and for full and complete settlement of all claims for alimony and child support *** and final settlement of [Glenn's] obligation to support and maintain wife and pay child support." The May 18, 1979, agreement, however, does not mention Glenn's obligation to pay Ward's college expenses. The record does not disclose the amount of alimony and child support that was actually claimed to have been due Martha from Glenn under the 1968 property settlement agreement and divorce decree over the 11-year post-decree period when Martha and Glenn entered into the May 18, 1979, post-decree agreement.

As stated, the record likewise does not reveal whether Ward received any of the $11,550 from the 1979 post-decree agreement between his parents for any of his college expenses. The record does not disclose the total cost of Ward's college education. It is clear, however, that Ward relied on his father's obligation under the 1968 property settlement agreement and the 1968 divorce decree when he enrolled in college in 1978. Although Ward had not finished college, in his 1984 motion to compel his father's compliance with the agreement and divorce decree and pay his college expenses, Ward stated that he had incurred $19,589.33 in college tuition, books and supplies. Ward asked that Glenn be required to reimburse him for that amount as well as pay his future college expenses. Glenn did not contend that the $11,550 Martha received from him pursuant to the 1979 agree-

ment was adequate to satisfy the expenses of Ward's college education and Glenn's alimony and child support arrearages. Nor did Glenn deny that he had not paid any of Ward's college expenses.

Glenn contends before this court, as he successfully contended in the trial court, that Ward lacked standing in the trial court divorce proceedings to enforce the terms of the divorce decree which obligated Glenn to pay Ward's college expenses. Ward, on the other hand, contends that he has standing as a third-party beneficiary to the January 16, 1968, property settlement agreement to request the court to order that his father pay his college expenses pursuant to his obligation under said agreement. Glenn argues that even if Ward is a third-party beneficiary (1) Ward is precluded by the 1979 agreement from bringing this action, (2) there is no statutory provision or case law allowing Ward's action, and (3) at most, Ward is only an incidental beneficiary.

■■ ■ The rule in Illinois is that a third party who is the direct beneficiary of a contract has standing to enforce the obligations for his benefit incurred under that contract. As stated in *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 384-85, 400 N.E.2d 918:

> "The classic statement of the rule in Illinois was made by this court in *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257-58:
>
> > 'The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof.
> >
> > * * *
> >
> > The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed.' "

■■ This clear and unambiguous standard controls the case at bar and decides that Ward has standing as a third-party beneficiary to bring this action. Three factors are controlling.

First, our focus is on the January 16, 1968, agreement in which Martha and Glenn agreed that "Glenn E. Miller shall pay for the expenses including the tuition incident to the attendance in college by *the child of the parties, Ward Anthony,* even though he may have attained the age of majority." Clearly, Martha and Glenn's contractual intent was to benefit Ward.

Second, according to the aforementioned third-party beneficiary

test in *Resnik*, a benefit of the agreement—payment of Ward's college tuition and expenses—is direct to Ward, the third person. Ward was the only person mentioned in the agreement as a beneficiary of Glenn's obligation to pay Ward's college expenses. Also, since the liability of the promisor of an agreement must affirmatively appear from the language of the agreement (*Resnik*, 78 Ill. 2d at 385; *Smith v. Clark Equipment Co.* (1985), 136 Ill. App. 3d 800, 804, 483 N.E.2d 1006), we further mention an obvious fact, that the liability to pay Ward's college expenses is stated in the agreement as an obligation that Glenn would undertake.

Third, it is undisputed that Ward relied on his father's promise in the agreement to pay his college expenses. Ward enrolled in college in June 1978 and has matriculated in college from that date to 1984, when he filed his motion to compel his father's compliance with his agreement to pay his college expenses. He has been enrolled in college over a period of six years and he has incurred over $19,000 in expenses in attending college.

*Joslyn v. Joslyn* (1944), 386 Ill. 387, 54 N.E.2d 475, held that children who were beneficiaries under the terms of a contract entered into between their parents had standing to bring an action against their father to enforce his compliance with the contract's terms. *Joslyn* is controlling in the case at bar. In *Joslyn*, the wife-mother and husband-father on June 12, 1938, entered into an agreement which provided that the father would pay the $20,000 mortgage note on the family home. The wife agreed not to encumber or sell the premises without the husband's consent. The agreement further provided that the property would pass to the husband and wife's four children upon the wife's death and that the husband would pay the wife $1,000 per month for the children's and wife's support. The supreme court held:

> "The contract under seal, entered into for a valuable consideration, was a valid contract. It provided that the four minor children of George R. and Charlotte Joslyn be third party beneficiaries. It was binding on both parties." 386 Ill. at 398-99.

In *Joslyn*, after the husband and wife entered into the aforesaid agreement the wife filed suit in Cook County for divorce. The divorce decree entered in the case determined the alimony and property rights of the parties. Subsequently, foreclosure proceedings were instituted in Lake County on the family home, in which the wife and four children filed a counterclaim based on the June 12 agreement between the wife and husband. Their counterclaim was dismissed by the trial court. The appellate court affirmed the dismissal. In the supreme

court the husband-father contended that the wife-mother submitted her right to alimony in the divorce case in Cook County and having obtained a divorce decree therein, the wife and children were barred by that decree from asserting any rights under the June 12 contract in the Lake County foreclosure proceedings. The supreme court reversed, stating, as previously pointed out, that the June 12 agreement between the wife and husband was a valid contract and that their four minor children were third-party beneficiaries therein. The supreme court further stated in *Joslyn*:

> "[T]he filing of the suit for divorce and fixing the amount George R. Joslyn should pay his wife for her support and that of their four minor children, did not in any way adjudicate and determine the rights of appellant and her four minor children under the provisions of the contract, with reference to the promise made by George R. Joslyn to pay the notes secured by the trust deed.
>
> *The rule is well settled that where a person makes a promise to another, based upon a valid consideration, for the benefit of a third person, such third person may maintain an action on the contract.*" (Emphasis added.) 386 Ill. at 400.

In *Larsen v. Larsen* (1984), 126 Ill. App. 3d 1072, 468 N.E.2d 165, the divorce decree incorporated the parties' property settlement agreement, both of which provided that the father would be responsible for his daughter's college education. Six years after the divorce decree was entered, the trial court ordered the father to pay $6,000 toward his daughter's college expenses for an academic school year. The father appealed. In affirming, the court stated:

> "In the instant case, specific responsibilities were created regarding Christian's college expenses when the parties entered into the separation agreement which was later incorporated into the divorce decree. This is not a situation where the trial court was faced with the question of college expenses for the first time after the divorce decree was entered. We agree with the trial court that the clear intent of the divorce decree was that William would bear the burden of his daughter's college expenses ***.
>
> * * *
>
> Where, as here, the obligation to provide for a child's college expenses is included in a property settlement agreement which is later incorporated in a divorce decree, that obligation is said to be even more definite and obligatory." 126 Ill. App. 3d at 1073.

In *Sovey v. Sovey* (1975), 30 Ill. App. 3d 690, 333 N.E.2d 299, the appeal involved a property settlement agreement which was entered into by the parties prior to the divorce decree but which was incorporated in the divorce decree. The property settlement agreement provided, *inter alia*, that the father would pay the college education expenses of the parties' two sons. The father contended that his obligation to pay the sons' college expenses had terminated. The court held that it was well settled that the court may require a father in a divorce proceeding to provide for his child's education beyond the child's minority and that provision for college education may be required even though the child may be an adult. The court further reiterated the principle that, "Where as in the instant case the obligation to provide a college education for the children to the parties of a divorce action was included in the property settlement agreement and thereafter incorporated in the decree of divorce[,] the obligation to provide the college education is even more definite and obligatory on the parties." 30 Ill. App. 3d at 692.

*In re Marriage of Dowty* (1986), 146 Ill. App. 3d 675, 678-79, 496 N.E.2d 1252, is called to our attention for the proposition therein stated:

> "It has also been established that where a property settlement agreement between spouses whose marriage is being dissolved has been approved by the court and incorporated in the judgment of dissolution, it becomes merged in the judgment and the rights of the parties thereafter rest on the judgment."

This principle is designed to promote justice by aiding the court in execution of its judgments, for the court further stated in *Dowty*, "The trial court is required in such circumstances to direct performance of the obligations under the judgment so as to fully execute its terms." 146 Ill. App. 3d at 679.

Other language in *Dowty* is applicable and confirms our application of the third-party beneficiary principles of *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, to the case at bar. In *In re Marriage of Dowty* (1986), 146 Ill. App. 3d 675, 496 N.E.2d 1252, a written property settlement agreement had been entered into by the husband and wife. The agreement provided that the marital residence held in joint tenancy was to be sold and the proceeds shared equally between the husband and wife. This provision of the property settlement agreement was to have been incorporated in the divorce decree, but was inadvertently omitted therefrom. The wife died after the divorce decree was entered but before the real estate was sold. The husband took the real

estate off the market. The administrator of the wife's estate brought the action in *Dowty* to force the husband to list the property for sale and, after sale, to distribute the proceeds in accordance with the terms of the settlement agreement. The trial court denied the wife's administrator relief. This court reversed and held:

> "*Plaintiff also contends that under a contract theory premised upon the property settlement agreement that the estate may enforce the terms of the agreement. We agree,* finding that *Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 708, 467 N.E.2d 929, *appeal denied* (1984), 101 Ill. 2d 587, is dispositive of that issue. [Citation.] The agreement between the parties fully defined the nature and extent of their rights and liabilities with respect to the marital property and the trial court is obliged to execute the terms of its judgment. These property issues survive the death of a party where the judgment was entered prior to the death. [Citation.] There can be no question here that the wife was entitled during her life following the dissolution to enforce the judgment and to require the sale and distribution of the proceeds in accordance with the terms of the judgment. [Citation.] The estate may now do so in her stead." (Emphasis added.) 146 Ill. App. 3d at 680.

In *Sondin v. Bernstein* (1984), 126 Ill. App. 3d 703, 467 N.E.2d 926, the property settlement agreement which provided that the husband and wife were to share equally in the proceeds from the sale of the property held in joint tenancy by them was incorporated and merged into their divorce decree. The husband died before the property was sold and his administrator sued for his share of the proceeds from the subsequent sale of the property. In affirming the trial court's finding in favor of the husband's administrator, this court declared:

> "When an agreement by divorcing spouses concerning property rights is approved by the court and incorporated into the divorce judgment, it becomes merged in the judgment ***. [Citation.] *In interpreting such an agreement, the courts apply normal rules for construction of contracts.* [Citation.] Accordingly, the object in so doing is to give effect to the apparent intent of the court [citation] and the intention of the parties. [Citation.] When no ambiguity exists on the face of the judgment, the intent of the parties will be determined only from the language of the instrument itself. [Citation.] Thus, the property settlement agreement defines the nature and extent of the rights and the liabilities of the parties with respect to the marital property, and *the trial court is required to direct perform-*

*ance of those obligations under the judgment so as to fully execute its terms.* [Citation.]

\* \* \*

In the instant case, the divorce judgment incorporated the property settlement agreement and was entered by the trial court 12 years prior to Nickle's death. Each party has been entitled to enforce the agreement at all times since the entry of the judgment. [Citation.] The language of the agreement unambiguously stated that 'in the event of the sale \*\*\* the parties share equally in any profits of said sale \*\*\*." (Emphasis added.) 126 Ill. App. 3d at 708-09.

Under these foregoing authorities, the trial court erred in dismissing Ward's motion to compel his father, Glenn, to comply with his 1968 agreement and divorce decree to pay Ward's college expenses. We hold that Ward, as a direct third-party beneficiary of his parents' 1968 agreement, had standing to seek by court order Glenn's compulsory compliance with his agreement to pay Ward's college expenses.

*Palya v. Palya* (1980), 87 Ill. App. 3d 472, 409 N.E.2d 133, is not a contrary holding. For that matter, the facts and principles upon which the court relied in *Palya* in barring the children's action against their divorced father are conspicuously absent in the case at bar. In *Palya,* the 1971 divorce decree provided that certain silver coins were to be kept by the defendant-father for the use and benefit of the children's education. In 1978 post-divorce decree proceedings brought by the mother to compel the defendant to turn the coins over to the children, the defendant responded that he had sold the coins. Pursuant to court order the defendant gave the mother cash in lieu of the coins. Subsequently, the children filed their complaint against their father for an accounting of the coins from their sale. The children's complaint was dismissed on the ground that the court order of payment to their mother in the prior proceedings brought by their mother barred and estopped the children's action against their father. This court affirmed and held:

"The Plaintiffs' mother was bringing the action on their behalf. She was bringing suit to have the coins which were to be used for plaintiffs' benefit turned over to them. Since she had no interest in the coins, she could not have been bringing suit on her own behalf and had to be bringing it on plaintiffs' behalf. She brought the suit to protect their rights. To permit plaintiffs to relitigate the issue on the ground they were not formally made parties to the previous action would be to elevate form over substance. The plaintiffs were in fact the parties in interest in

the previous action just as they are the parties in interest in the present action. To adopt plaintiffs' approach would mean that every action in a proceeding for dissolution of marriage would be subject to the threat of interminable litigation. Under plaintiffs' approach, children of parents dissolving their marriage would be able to reopen the proceeding if dissatisfied with the parents' and court's agreement concerning them. *The courts, in handling such proceedings must look to the children's best interests. This guarantees that they will be protected.* To permit them to reopen litigation where their rights have been adequately protected would contravene the policy of judicial economy as well as the policy that there should be an end to litigation. In the instant case, the plaintiffs' mother had the opportunity to introduce all the evidence needed to protect the plaintiffs' rights. Therefore, we hold that where the mother brings suit to protect the children's rights the children are barred by *res judicata* from relitigating the same cause of action concerning the same subject matter." (Emphasis added.) 87 Ill. App. 3d at 474-75.

Parenthetically, we note that Ward's action in the case at bar presents no "threat of interminable litigation." Moreover, in the case at bar, unlike in *Palya,* the trial court did not "look to the children's best interests," and there was no guarantee that Ward was protected. In fact, Ward was not protected and his mother did not bring an action to protect his interest; rather, Ward's mother endeavored to bargain away Ward's right and interest. Moreover, "judicial economy" is not involved in the case at bar as it was in *Palya.* If it were so involved, "judicial economy" certainly would not take precedent over Ward's right and Glenn's obligation to pay Ward's college expenses. Additionally, *Palya* inferentially recognized the children's right to bring such an action. Their complaint against their father was not dismissed because they lacked standing, which standing, Glenn urges, Ward lacked in the case at bar. Rather, in *Palya,* the children's complaint against their father was dismissed simply because of *res judicata,* which tacitly infers that had the issue not been previously adjudicated, their complaint would have been allowed to stand.

While the cases regarding a parent's duty to pay support are legion, recent cases regarding a parent's duty to pay college expenses focus on section 513 of the Illinois Marriage and Dissolution of Marriage Act, which states in part:

> "*The Court also may make such provision for the education and maintenance of the child or children, whether of minor or*

*majority age,* out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 40, par. 513.

See *In re Support of Pearson* (1986), 111 Ill. 2d 545, 490 N.E.2d 1274 (the supreme court stated that the statutory provision for the education of children addresses matters of the trial court's discretion); *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015 (ill will that developed between father and daughter did not relieve father of his obligation, pursuant to agreement incorporated into dissolution decree, to contribute to daughter's education expenses); *Faust v. Faust* (1981), 100 Ill. App. 3d 232, 426 N.E.2d 994 (section 513 permits a court in a divorce proceeding to make provision for education and maintenance of child, whether of minor or majority age, out of property of either parent and allows the court to make such award from wages, profits from investments, property holdings and from other assets and resources of value).

Glenn brings to our attention *In re Marriage of Garrison* (1981), 99 Ill. App. 3d 717, 425 N.E.2d 518, on which the trial court relied in dismissing Ward's motion. In *Garrison,* the divorce decree awarded the wife the marital residence as her sole and separate property. The decree provided, however, that should the property be sold, the wife was to set up a trust fund of $3,600 from the proceeds of the sale for the benefit of the parties' child. Five years after the divorce decree was entered, the wife-mother sold the residence but she did not create the trust for the child's benefit from the proceeds of the sale. The child filed a petition to enforce her to do so and requested that judgment in the amount of $3,600 be entered in his behalf against her. The court held that the child "lacked standing in this proceeding to seek enforcement of the provision of the judgment for divorce to which he was not a party defendant," in reliance on the authority of *Diaz v. Diaz* (1980), 83 Ill. App. 3d 341, 403 N.E.2d 1219, and stated:

"In a somewhat analogous context the court in *Diaz* [citation] rejected an effort by a creditor which was not a party to the divorce action, although it was an incidental beneficiary of the

judgment, to petition for a rule to show cause to enforce a payment ordered by the divorce judgment. The court noted it was quite usual in matrimonial cases that one spouse be ordered to pay a debt of another but that '[g]reat difficulties could well arise if such creditors could, as a matter of right, use the contempt process to require such payment.' " *In re Marriage of Garrison* (1981), 99 Ill. App. 3d 717, 721.

We are not persuaded by *Diaz* or *Garrison*. Ward was not an incidental creditor of Martha and Glenn's and he should not be treated as such. Ward was Martha and Glenn's son and he should be treated as such—unwarranted judicial concerns for the court's disposition docket in actions by third-party beneficiaries notwithstanding. Second, neither *Diaz* nor *Garrison* decides or discusses the third-party beneficiary principles adopted in *Joslyn, Palya, Resnik, Dowty* and *Sondin*, or the divorce decree obligations of the father to pay his child's college expenses enunciated in *Larsen, Sovey, Pearson, Faust, Houston* and section 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 513), which principles we prefer to adopt and apply herein.

It is apparent that in the 1979 agreement Martha and Glenn attempted to bargain away Ward's rights under the January 16, 1968, agreement and the divorce decree, Glenn's duty to pay for Ward's college education expenses, and Ward's right to compel Glenn to pay his college education expenses, without any benefit to Ward, without judicial approval, and, more importantly, without any means available to Ward to judicially contest the validity of this 1979 agreement. We question the propriety of this agreement executed by parents a week before their child reached his majority and which attempted to completely absolve the father of his obligation under his agreement and under a divorce decree to pay his child's college expenses.

For the foregoing reasons, the order of the circuit court of Cook County dismissing Ward's petition is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P.J., and MURRAY, J., concur.