### Pauline F. NOWAK, et al., Appellants

v.

### Walter S. TREZEVANT, Appellee.

Nos. 94–FM–448, 94–FM–459.

District of Columbia Court of Appeals.

Argued April 4, 1995.

Decided Nov. 27, 1996.

W. Francis Trezevant, Buffalo, NY, for appellants.

Walter S. Trezevant, appellee pro se.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

Appellant [1] seeks review of two trial court orders, both entered on the same date. The first, a *nunc pro tunc* consent order, incorporated an oral agreement reached by the parties on the record, in open court, at a hearing held three years earlier. The second, which was based on the oral agreement and the consent order, denied appellant's motion for contempt and mandatory withholding of child support payments. Appellant contends that the trial court abused its discretion by entering the *nunc pro tunc* consent order and by denying her contempt motion without a hearing. We affirm.

I

Appellant and appellee were divorced in 1974. The original divorce decree, which was issued on January 8, 1974, was subsequently modified three times—in 1980, 1985, and 1986.[2] Over the next several years both

---

1. Both Pauline Nowak and her daughter, Danielle Trezevant, purport to appeal from the trial court's rulings. We have serious doubts about whether the daughter is even a party to this litigation, but in light of our holding on the merits, we need not resolve those doubts. We shall, in any event, refer only to Ms. Nowak as the appellant in the course of this opinion.

2. The original order granted custody of the parties' three minor children to their mother (appel-

lant). At the time of the 1986 order, custody of the oldest child David, then eighteen years old, was no longer an issue. The youngest, Danielle, was thirteen years old and resided with her mother. William, who was then seventeen, had left his mother to live with his father. The court granted custody of William to his father and reduced the father's payments from $500 to $430 per month ($300 in child support plus $130 for health insurance for all three children).

parties continued to file numerous motions and other pleadings.[3] In February 1991 appellant moved again to increase child support from $430 per month to $1,345 per month based on an asserted "material change of circumstances." After several more pleadings replete with hostile accusations were filed by both appellant and appellee, the trial court held a hearing on March 27 and 28, 1991, which included discussions in chambers with both parties as well as the children. Finally, on the second day, the parties reached an agreement modifying the 1985 consent order. At that time it was orally agreed that the transcript of the agreement, as read into the record, would serve as the official consent order.[4] The new agreement terminated appellee's obligations to pay health insurance and college tuition, as required under the 1985 agreement, in exchange for higher monthly child support payments to begin immediately. These increased payments were to continue until Danielle, the youngest child, reached the age of twenty-one.

Appellee's attorney later drafted a consent order based on the oral agreement as recorded in the transcript, and appellant challenged it by proposing revisions in a letter sent to the court (see note 10, *infra*). Two years later, on July 12, 1993, appellant filed a "motion for contempt and mandatory withholding," alleging that appellee had not complied with the 1991 order. Appellant stated that appellee had not met his obligations under the order, that the obligation for Danielle's college tuition was to extend beyond her twenty-first birthday, and that appellee's support payments were in arrears.[5] In response, appellee filed a "motion to modify child support," requesting the court to reduce his support payments because of a substantial and material change of circumstances.[6]

On March 10, 1994, Judge Taylor denied both appellant's and appellee's motions. Concerning appellant's motion for contempt, Judge Taylor stated that there was no merit in appellant's assertions that the 1985 consent order remained in effect, that appellee had stopped sending support payments for Danielle, that the payments were in arrears, and that appellee was "obligated by virtue of that 1985 order or otherwise to pay tuition for Danielle."[7] The judge also denied appellee's motion to modify his support obligations, stating that if there was indeed a change in circumstances, it was "voluntary and quite foreseeable." On the same day, Judge Mitchell, the presiding judge at the 1991 hearing, signed a *nunc pro tunc* consent order which recited, in written form, the oral agreement reached by the parties at that earlier hearing. It is from these two orders, one by Judge Taylor and one by Judge Mitchell, that appellant appeals.[8]

## II

Appellant claims that Judge Mitchell abused his discretion when he signed and

---

3. On July 27, 1988, in response to further motions by the parties, the trial court ruled that appellee was in compliance with a previous court order and ordered appellant to pay $250 to appellee as a sanction for filing frivolous motions. *See also, e.g., Trezevant v. Trezevant*, 403 A.2d 1134 (D.C.1979).

4. Given the history of the case and the belligerency of the parties, the court feared that the language of a written order would be challenged.

5. The record does not reflect exactly when Danielle turned twenty-one, but in an order dated March 7, 1986, the trial court stated that Danielle was then thirteen years old. This appears to be inconsistent with a letter dated April 8, 1991, written by her mother to the trial judge, which stated that Danielle was then seventeen (not eighteen, as she would have been if she was thirteen in March 1986). Given our holding in this case, we need not resolve this discrepancy.

6. Appellee, who had recently retired, stated that his previous income of $86,589 had been reduced to $54,744 per year, whereas appellant's salary had increased from $48,615 in January 1991 to approximately $58,000 in July 1993.

7. This last statement appears to be in error because the 1985 agreement provided that appellee "shall pay the tuition cost for each of the three children to attend a four-year post-high-school educational institution of his or her choice." However, since we hold that the tuition-payment requirement of the 1985 agreement is no longer in force because it was rescinded by the 1991 agreement, the error is harmless.

8. Appellee has not filed a cross-appeal from the denial of his motion to modify child support.

entered the *nunc pro tunc* consent order because the order itself was not signed or agreed to by the parties. She maintains that the 1985 agreement is still in force, and that under that agreement Danielle is entitled to payments from her father for her college tuition. Appellant further argues that Judge Taylor abused her discretion when she denied the motion for contempt because that denial was based on the purportedly invalid consent order. Finally, appellant asserts that the denial of her contempt motion without a hearing violated Danielle's due process rights. These claims are without merit.

■ At the hearing on March 28, 1991, it was agreed by the parties and the court that the transcript of the hearing would serve as the written embodiment of the new child support agreement:

THE COURT: ... I see no major differences in what you both are saying. It would seem to me that it would be a resolution of the matter. So if there is such an agreement reached, I certainly will approve it.

MS. NOWAK: All right, sir. Would you want me to execute it?

THE COURT: It does not matter to the court. But if you are going to fight over the language of it, which I suspect you will, I—

MS. NOWAK: Or the transcript can serve to do that.

MS. SELPH [counsel for Mr. Trezevant]: Your Honor, what my suggestion is, and this is what we have done on occasions before in this matter, is we have specifically made exact rulings on the record and then allowed the transcript of that record to serve as the order.

THE COURT: All right. Then we can do that.

\* \* \* \* \* \*

THE COURT: The record should reflect that the parties have resolved their differences ... in the manner indicated on the record, and that will serve as the agreement.

■ During the same discussion, appellee's attorney read the terms of the agreement into the record, as follows:

The 1985 consent order, as modified in 1986 by Judge Taylor, with its provisions for payment of tuition, health insurance, and child support, shall be and they hereby are modified such that *the defendant's obligation to pay health insurance and tuition expenses be terminated* and the defendant shall be required to pay the sum of $1,157 per month ... [and] child support of $1,157 shall terminate on the 21st birthday of Danielle A. Trezevant. [Emphasis added.]

When asked by the judge if she agreed with this statement, appellant stated, "Essentially yes, Your Honor," except that she asked for clarification of the term "with prejudice." After the judge explained it to her, he again asked appellant, "That then will be the agreement? That is the agreement?" Appellant replied, "Yes, sir, it is," requesting only that copies of the relevant transcript be made available within a specified time. Now, however, appellant seeks to avoid the terms of the *nunc pro tunc* consent order by characterizing what she agreed to in 1991 as only a "proposed" agreement. She contends that since the order was never signed by any of the parties, it is not valid.[9] She also maintains that Danielle, as a third-party beneficiary of the 1985 agreement, is entitled to the payment of her college expenses as that agreement provided.[10]

■ A consent order is both a contract and an order of the court, "indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order." *Padgett v. Padgett,*

---

**9.** A basic principle merits repeating here: "Parties may not assert one theory at trial and another theory on appeal." *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982) (citation omitted).

**10.** Appellee's attorney drafted a proposed order, apparently at Judge Mitchell's request, which she sent to the judge on April 1, 1991. The order reflected the language of the agreement as recorded in the transcript. A copy of the proposed order was sent to appellant, who returned it with modifications, but those modifications did not include any change in the language which terminated tuition payments.

472 A.2d 849, 852 (D.C.1984); *accord, e.g., Clark v. Clark,* 638 A.2d 667, 671 (D.C.1994). "It should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake." *Moore v. Jones,* 542 A.2d 1253, 1254 (D.C. 1988) (citations omitted). The parties clearly agreed at the hearing on March 28, 1991, that the transcript of the proceedings would serve as the new agreement. Thus that agreement, as set forth in the transcript, became a binding contract which expressly terminated appellee's obligation under the prior agreement to pay Danielle's college tuition. It was partly at appellant's own suggestion ("the transcript can serve to do that") that the judge agreed to allow the transcript of the proceedings to serve as the court's order, and the judge took great pains to ensure that the terms of the agreement were understood and accepted by both parties on the record. Appellant has not shown any legal basis for nullifying or avoiding the 1991 agreement. We therefore hold that the agreement of March 28, 1991, as set forth in the transcript of the hearing on that date, is binding on both parties, and that the portion of the 1985 agreement (as modified in 1986) requiring appellee "to pay health insurance and tuition expenses" is no longer in force.

Appellant argues that Danielle is a third-party beneficiary of the 1985 agreement, citing cases from other jurisdictions (none from the District of Columbia) to support her assertion that Danielle has standing to compel her father to pay for her college expenses.[11] This court has not yet decided whether a child who is the subject of a support agreement has standing as a third-party beneficiary to seek judicial enforcement of that agreement. We conclude, for reasons we shall explain, that we need not decide that question in this case.

Although we have found no case exactly like this one, Judge Dixon of our Superior Court has recently decided a case with very similar facts, and we find his reasoning persuasive. In *Shwayder v. Gross,* 124 Daily Wash. L. Rptr. 1473 (D.C.Super. Ct. June 12, 1996), the court in 1991 had entered an order denying a mother's motion for an increase in the level of child support to be paid by her former husband. About a year later, the eighteen-year-old daughter of the parties moved, as an intervenor, for an increase in the support payments which her father had agreed to make.[12] After allowing her to proceed as an intervenor (over the father's objection), the court denied her motion on the ground that the 1991 order was *res judicata* as to her present claim. The court cited, *inter alia,* our decision in *Washington Medical Center v. Holle,* 573 A.2d 1269 (D.C. 1990), in which we reiterated the well-established rule that a valid judgment in a prior proceeding bars "the parties *or those in privity with them* ... from relitigating the same claim or any claim that might have been raised in the first proceeding." *Id.* at 1280–1281 (citations omitted; emphasis added). The court concluded that in the prior litigation that had resulted in the 1991 order, the daughter had been in privity with her mother, so that the claims litigated in 1991 by the mother could not be relitigated thereafter by the daughter.

■ It has long been settled in the District of Columbia that a parent seeking child support is acting solely on behalf of the child, and that the child is the real party in interest in a support proceeding because "[c]hild support is a right which belongs to the child." *Burnette v. Void,* 509 A.2d 606, 608 (D.C. 1986) (citations omitted). The courts also are obliged to assess the child's needs in determining the amount of any court-ordered support payments. *See, e.g.,* D.C.Code § 16–

---

11. *See, e.g., Orr v. Orr,* 228 Ill.App.3d 234, 170 Ill.Dec. 117, 592 N.E.2d 553 (1992); *Miller v. Miller,* 163 Ill.App.3d 602, 114 Ill.Dec. 682, 516 N.E.2d 837 (1987); *Morelli v. Morelli,* 102 Nev. 326, 720 P.2d 704 (1986). The only case cited by appellant which holds that a child has standing to compel a parent to pay tuition expenses under an earlier agreement that was later amended is *Miller v. Miller.* That case, however, is distinguishable from the instant case, since the court

in *Miller* found evidence of fraud, which is not present here.

12. The parties had been divorced several years earlier, and their support agreement and property settlement had been incorporated into the divorce decree. The support agreement was modified at least once thereafter by a consent order.

916.1(b)(3) (1996 Supp.). "The courts, in handling such proceedings, must look to the children's best interest. This guarantees that they will be protected." *Palya v. Palya,* 87 Ill.App.3d 472, 474, 42 Ill.Dec. 638, 640, 409 N.E.2d 133, 135 (1980) (cited in *Shwayder, supra,* 124 Daily Wash. L. Rptr. at 1478). Thus we held, for example, in *Burnette v. Void,* a case in which a mother was seeking an increase in support payments for her minor child, that any misconduct on the part of the mother could not be considered by the court in ruling on the mother's request. Because the mother was seeking to enforce only her child's rights, not her own, the claim for support could not be adversely affected by the mother's unclean hands. *Burnette,* 509 A.2d at 608.

■ Recognizing that the child's rights and interests had previously been litigated by the mother, the court held in *Shwayder* that the daughter was barred by *res judicata* from litigating them again:

> Any increase or extension of child support [in the prior proceeding] would have been for the benefit of [the daughter] and not [the mother].... Therefore, this court finds that the [daughter] is precluded by the doctrine of *res judicata* from bringing her cause of action because she was in privity with the [mother] who represented her interests in prior litigation.

*Shwayder v. Gross, supra,* 124 Daily Wash. L. Rptr. at 1478. For the same reasons, we hold in this case that because the claim for increased support that appellant litigated before Judge Mitchell in 1991 was really her daughter's claim and not her own, the daughter was in privity with her mother and may not now relitigate that or any related claim, either as a third-party beneficiary, as an intervenor, or in any other capacity. *Accord, Palya v. Palya, supra,* 87 Ill.App.3d at 475, 42 Ill.Dec. at 640–641, 409 N.E.2d at 135–136 ("we hold that where the mother brings suit to protect the children's rights, the children are barred by res judicata from relitigating

the same cause of action concerning the same subject matter").

Appellant's other arguments fail as well. Appellant mischaracterizes Judge Taylor's order of March 10, 1994, denying her motion for contempt and mandatory withholding, as a grant of summary judgment. She argues that since there were material facts at issue, the denial of her motion was error. We disagree. First, since the order was not a summary judgment, the issues of material fact claimed by appellant are irrelevant. Furthermore, the record supports Judge Taylor's conclusion that appellant failed to present any evidence to sustain her allegations that appellee was not abiding by the 1991 agreement. Thus we conclude that Judge Taylor did not abuse her discretion in denying the motion for contempt.

■ Finally, appellant claims that both the *nunc pro tunc* consent order and the order denying her contempt motion were arbitrary and deprived Danielle of her due process rights without a hearing.[13] These arguments are fundamentally flawed, for they are based on appellant's mistaken belief that the 1991 agreement is unenforceable and that the 1985 agreement is still in effect. For the reasons stated above, we hold that the parties are bound by the agreement of March 28, 1991, as set forth in the transcript of the proceedings before Judge Mitchell.

The two orders from which these appeals are taken are therefore

*Affirmed.*

---

**13.** We note in passing the firmly established rule that, with rare exceptions, one person cannot assert another person's constitutional rights. *See Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–967, 22 L.Ed.2d 176 (1969); *Belton v. United States,* 647 A.2d 66, 70 (D.C.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1383, 131 L.Ed.2d 236 (1995).