Filed 10/25/13  Estate of Woods CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of TIMOTHY LEONARD WOODS II, Deceased. | B240946 |
| _____ | (Los Angeles County Super. Ct. No. BP128167) |
| CYNTHIA GRIFFIN WOODS, as Special Administrator, etc., | |
| Petitioner and Respondent, | |
| v. | |
| SANDRA K. MC BETH, | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael I. Levanas, Judge.  Affirmed.

Ashton R. Watkins for Objector and Appellant.

Abdulaziz, Grossbart & Rudman and Bruce D. Rudman for Petitioner and Respondent.

_____

Timothy Leonard Woods II (Woods) and his sister Sandra K. McBeth (McBeth) owned several properties separately and in joint tenancy. Woods filed a quiet title and partition action against McBeth regarding the properties. Subsequently, he and McBeth entered into a settlement agreement. Woods attempted to enforce the settlement agreement but passed away before the matter was resolved. His widow, Cynthia G. Woods, as special administrator of Woods's estate (Woods's Estate), successfully petitioned to enforce the settlement agreement. McBeth appeals from a judgment entered in favor of Woods's Estate, contending that her "right of survivorship" on Woods's death to two of the properties rendered the settlement agreement "moot"; the probate court erred in determining the settlement agreement was enforceable; and the court erred in determining Woods's Estate was entitled to an offset and attorney fees. We conclude that McBeth failed to establish that the settlement agreement was "moot"; instead, the joint tenancies as to the two properties were severed by the settlement agreement and Woods's actions. We also conclude that McBeth failed to establish that the court erred in concluding the settlement agreement was enforceable. Further, we determine that McBeth failed to show that the court erred in concluding that Woods's Estate was entitled to an offset. And McBeth failed to file an appeal as to the order for attorney fees and cannot raise that issue on appeal. We affirm the judgment.

## BACKGROUND

In 2008, Woods filed a complaint against McBeth entitled *Woods v. McBeth* (Super. Ct. L.A. County, No. BC390549) (Quiet Title Action). The Quiet Title Action alleged causes of action for quiet title, declaratory relief, fraudulent conveyance, partition, money had and received, unjust enrichment, and embezzlement concerning properties held separately and jointly by Woods and McBeth, including two properties owned jointly by Woods and McBeth located on South Broadway in Los Angeles (Broadway Property) and on Monteith Drive in Los Angeles (Monteith Property). The Quiet Title Action alleged that McBeth had not been paying her share of loans on the properties and had not been using the rent money to maintain the properties or pay taxes. Also, McBeth had received a $1 million loan secured by a deed of trust on property

2

located on Senford Avenue that she purchased with a fraudulent loan application using Woods's name.

In May 2010, Woods and McBeth entered into a "Compromise Agreement and Mutual Release" (Settlement Agreement). The Settlement Agreement provided, in pertinent part, as follows. "3. Each party . . . settles . . . all . . . claims . . . [arising] from the subject matter of the actions . . . which could have been alleged in [the Quiet Title Action] . . . on the following terms and conditions: [¶] a. Subject to a title report (paid for by WOODS) showing clear title to the [Broadway Property], the parties agree as follows: [¶] i. McBETH will transfer [the Broadway Property] to WOODS, by notarized quit claim deed, within five business days of this Agreement; [¶] ii. McBETH will move out all her belongings including company records from the [Broadway] Property on or before July 31, 2010; [¶] iii. McBETH will provide a rent roll and any leases in force on [the Broadway Property] within the same five day period; WOODS will solely be entitled to all income and will solely assume all expenses and incidents of ownership for said property from the date of the transfer. [¶] iv. WOODS will transfer to McBETH the other five JOINTLY OWNED PROPERTIES by notarized Quit claim deeds, within five days of this Agreement; McBETH will solely be entitled to all income and will solely assume all expenses and incidents of ownership of those five properties from the date of the transfer. [¶] v. WOODS shall pay McBETH the sum of Twenty-Five Thousand Dollars ($25,000.00) by simultaneous exchange with the deeds referenced herein above; and; [¶] vi. WOODS shall sign all forms necessary to release or otherwise remove any lis pendens that has been filed against any of the JOINTLY OWNED PROPERTIES at the same time the deeds and money referenced above are exchanged. [¶] vii. WOODS shall dismiss his Complaint with prejudice within ten days of the complete performance by McBETH herein; [¶] b. Each party hereto shall bear its own attorneys' fees and costs in the [Quiet Title Action]; and [¶] c. This entire agreement is subject to a title report showing clear title to the [Broadway Property]. WOODS will arrange for and pay for this title report or title policy."

3

The Settlement Agreement provided, "This Agreement may be enforced in the Superior Court of the State of California pursuant to *Code of Civil Procedure* sections 664.6 and 664.7. . . . [I]f litigation or court intervention is required to enforce the terms of the settlement, the prevailing party in said action shall be entitled to recover from the other party its actual attorney's fees and costs incurred."

A May 20, 2010 amendment to the Settlement Agreement (Amendment) stated, "McBETH has informed WOODS that . . . [two properties] have already gone to foreclosure sale, and [two properties ] are going to sale in the next few weeks. WOODS acknowledges receipt of this disclosure from McBETH. WOODS will transfer whatever interests he has by quitclaim deed, if desired by McBETH, or the transfer of these four properties can be waived by McBETH at her discretion." The Amendment provided that if McBeth did not vacate the Broadway Property by July 31, 2010, she would pay $50 per day as rent until she vacated the Broadway Property and her belongings were removed. McBeth also set forth a rent roll in the Amendment.

In September 2010, Woods filed a motion to enforce the Settlement Agreement in the Quiet Title Action, declaring that a title report showed "more than $50,000 in indebtedness against McBeth which prohibited the procurement of loans, or the transfer by [Woods] of the [Broadway] Property absent [his] clearing title." Woods declared that McBeth did not respond to Woods's request to provide clear title to the Broadway Property. Shortly after the motion was filed, Woods died intestate. Woods's Estate substituted in as plaintiff. The trial court issued a tentative ruling that the Settlement Agreement was enforceable, but directed Woods's Estate to refile the motion in the probate department.

On August 16, 2011, Woods's Estate filed a petition to enforce settlement agreement and order conveyance of real property in the probate court (petition). The petition alleged as follows. Prior to Woods's death, Woods and McBeth entered into the Settlement Agreement, which required McBeth to convey title to the Broadway Property free and clear of all liens to Woods, in return for Woods's deeding any interest he held in the five other properties to McBeth and paying her $25,000. McBeth repudiated the

4

Settlement Agreement and continued to collect rents on the Broadway Property, totaling more than $50,000. McBeth did not vacate the Broadway Property and as of July 31, 2011, owed $19,800 in rent.

Among other things, the petition requested that the probate court order title to the Broadway Property be transferred to Woods's Estate; title to the five other properties be transferred to McBeth; Woods's Estate not be required to pay $25,000 to McBeth; and Woods's Estate's attorney fees be paid by McBeth.

On March 1, 2012, Woods's Estate filed a motion to enforce the Settlement Agreement in the probate court. McBeth opposed the motion, contending that she owned the Broadway Property as the surviving joint tenant; the Settlement Agreement was conditional and Woods had not fulfilled the condition; and Woods's Estate was not entitled to any offsets.

On April 12, 2012, the probate court granted the motion to enforce the Settlement Agreement, ordering, among other things, McBeth to transfer title to the Broadway Property to Woods's Estate; Woods's Estate to transfer title to the Monteith Property to McBeth; the $25,000 that was to be paid by Woods to McBeth to be offset by rents received by McBeth; Woods's Estate not to be required to pay McBeth any sums under the Settlement Agreement; McBeth to remove her personal property from the Broadway Property; jurisdiction to award attorney fees incurred by Woods's Estate to be reserved and proven in a postjudgment motion; and tenants of the Broadway Property to be notified that all rents from May 2012 be paid to Woods's Estate. In making its ruling, the court stated, "The court has extensively given its reasonings on the record the last time we were together. My reasoning is exactly the same as I articulated on the record. My tentative is the order of the court." On appeal, McBeth does not provide a record of the tentative ruling or a reporter's transcript of the hearing in which the court gave its extensive "reasonings."

On April 30, 2012, McBeth appealed from the April 12, 2012 judgment. According to Woods's Estate's brief, on July 5, 2012, the probate court issued an order

awarding Woods's Estate attorney fees against McBeth in the amount of $14,310. That order is not in the record on appeal, and McBeth did not file an appeal as to that order.

## DISCUSSION

### A. McBeth failed to establish that her "right of survivorship" to the Monteith Property and the Broadway Property on Woods's death rendered the Settlement Agreement "moot"

McBeth contends that her right of survivorship to the Monteith Property and the Broadway Property on Woods's death rendered the Settlement Agreement "moot." We conclude that McBeth failed to establish that the Settlement Agreement was "moot"; instead, the joint tenancies as to the Monteith Property and the Broadway Property were severed by the Settlement Agreement.

"A joint tenancy is a joint interest owned by two or more persons, who have equal interests among themselves. (Civ. Code, § 683; [citations].) The joint tenants must share unity of time, title, interest and possession. A distinctive feature of joint tenancy, as opposed to other interests in land, is the right of survivorship. This means that when one joint tenant dies, the entire estate belongs automatically to the surviving joint tenant(s). [Citations.] Nothing 'passes' from the deceased joint tenant to the survivor; rather, the survivor takes from the instrument by which the joint tenancy was created. [Citations.] [¶] If, however, one of the four unities of time, title, interest and possession is destroyed before the death of a joint tenant, the joint tenancy is severed. [Citation.]" (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317.)

McBeth argues that Woods's Estate did not establish that the Monteith Property and the Broadway Property were not held in joint tenancy at the time of Woods's death or that the parties terminated the right of survivorship. She also urges that Woods's failure to "transfer his interest in the five jointly owned properties," failure to pay her $25,000, and death rendered the Settlement Agreement "moot." Further, she contends that Woods did not terminate the joint tenancy in the Broadway Property because he did not execute and deliver a deed that conveyed legal title to the joint tenant's interest to a third party or record a deed, declaration or written instrument that demonstrated the intent to sever the

6

joint tenancy pursuant to Civil Code section 683.2, subdivisions (a) and (c).[1] Thus, she claims that she solely owns the Monteith Property and the Broadway Property under the right of survivorship.

According to Woods's Estate, the probate court "determined that the right of survivorship was terminated by the *combination* of events including the filing of the partition action, the Settlement Agreement signed by both parties in interest which is enforceable pursuant to *Code of Civil Procedure* section 664.6 and which was intended to terminate the right of survivorship by transferring title, and the motion filed by [Woods] during his lifetime to enforce the Settlement Agreement and transfer the [Broadway

---

[1] Undesignated statutory citations are to the Civil Code.

Section 683.2 provides in pertinent part: "(a) Subject to the limitations and requirements of this section, in addition to any other means by which a joint tenancy may be severed, a joint tenant may sever a joint tenancy in real property as to the joint tenant's interest without the joinder or consent of the other joint tenants by any of the following means: [¶] (1) Execution and delivery of a deed that conveys legal title to the joint tenant's interest to a third person, whether or not pursuant to an agreement that requires the third person to reconvey legal title to the joint tenant. [¶] (2) Execution of a written instrument that evidences the intent to sever the joint tenancy, including a deed that names the joint tenant as transferee, or of a written declaration that, as to the interest of the joint tenant, the joint tenancy is severed. [¶] (b) Nothing in this section authorizes severance of a joint tenancy contrary to a written agreement of the joint tenants, but a severance contrary to a written agreement does not defeat the rights of a purchaser or encumbrancer for value in good faith and without knowledge of the written agreement. [¶] (c) Severance of a joint tenancy of record by deed, written declaration, or other written instrument pursuant to subdivision (a) is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied: [¶] (1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located. [¶] (2) The deed, written declaration, or other written instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant. [¶] (d) *Nothing in subdivision (c) limits* the manner or effect of: [¶] (1) *A written instrument executed by all the joint tenants that severs the joint tenancy.* [¶] (2) A severance made by or pursuant to a written agreement of all the joint tenants. [¶] (3) A deed from a joint tenant to another joint tenant." (Italics added.)

Property] to himself. The Court found that the conduct of Woods was effective to terminate the Right of Survivorship." Because McBeth failed to provide us with the tentative decision in which the probate court "has extensively given its reasonings," we cannot determine what factual findings, if any, the probate court made, and we therefore conclude that McBeth failed to show error. "'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. [Citation.]' [Citation.] This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error. [Citations.]" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

In any event, we disagree with McBeth's arguments. As noted by McBeth, section 683.2 provides that a joint tenancy may be severed by a recorded deed or written instrument. (§ 683.2, subd. (c).) But section 683.2 also provides, "Nothing in subdivision (c) limits the manner or effect of: [¶] (1) A written instrument executed by all the joint tenants that severs the joint tenancy. [¶] (2) A severance made by or pursuant to a written agreement of all the joint tenants." (§ 683.2, subd. (d).) Accordingly, "A joint tenancy may be terminated either by mutual agreement between the parties or by any conduct or course of dealings sufficient to indicate that all parties have mutually treated the joint tenancy as terminated [citations]. An agreement between the tenants which while it does not expressly terminate the tenancy, is inconsistent by its terms with one or more of the four essential unities of a joint tenancy, will also be adjudged to be a severance thereof. Thus, interference with the right of survivorship by the terms of an agreement will sever the joint tenancy relationship [citation]." (*Estate of Asvitt* (1979) 92 Cal.App.3d 348, 351 [property settlement agreement incorporated into dissolution agreement terminated joint tenancy as evidenced by decedent's attempt before death to force sale of family home upon youngest child's attainment of majority].)

Here, the Settlement Agreement provided for McBeth to transfer by notarized quitclaim deed her title and interest in the Broadway Property to Woods, effectively

8

terminating the joint tenancy of the Broadway Property. The Settlement Agreement also provided for Woods to transfer his ownership in the Monteith Property to McBeth, which terminated the joint tenancy. Therefore, even though Woods did not terminate the joint tenancy in the Monteith Property and the Broadway Property by executing and delivering a deed that conveyed legal title to the joint tenant's interest to a third party or recording a deed, declaration or written instrument that demonstrated his intent to sever the joint tenancy, the joint tenancies in the Monteith Property and the Broadway Property were severed by other means which McBeth ignores, namely, the Settlement Agreement. Thus, the probate court did not err in concluding that the Monteith Property and the Broadway Property were not held in joint tenancy at the time of Woods's death and that the parties had terminated the right of survivorship.

And we reject McBeth's argument that the Settlement Agreement was "moot" because Woods failed to "transfer his interest in the five jointly owned properties" or pay her $25,000. Any failure on Woods's part to perform a contract term does not render the Settlement Agreement moot but would go to the enforceability of the Settlement Agreement.

Accordingly, we conclude that the joint tenancies as to the Monteith Property and the Broadway Property were severed by the Settlement Agreement and Woods's actions.

**B. McBeth failed to establish that the probate court erred in concluding the Settlement Agreement was enforceable**

McBeth contends that because the Settlement Agreement was conditional, and the condition was not fulfilled, the probate court erred in concluding the Settlement Agreement was enforceable. We disagree.

Code of Civil Procedure section 664.6 provides, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." "Section 664.6 was enacted to provide a summary

9

procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions., Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "A court ruling on a motion under Code of Civil Procedure section 664.6 must determine whether the parties entered into a valid and binding settlement. [Citations.] A settlement is enforceable under section 664.6 only if the parties agreed to all material settlement terms. [Citations.] The court ruling on the motion may consider the parties' declarations and other evidence in deciding what terms the parties agreed to, and the court's factual findings in this regard are reviewed under the substantial evidence standard. [Citations.] If the court determines that the parties entered into an enforceable settlement, it should grant the motion and enter a formal judgment pursuant to the terms of the settlement. [Citation.] The statute expressly provides for the court to 'enter judgment pursuant to the terms of the settlement.' (Code Civ. Proc., § 664.6.)" (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182–1183, fn. omitted.) "An appealed judgment is presumed correct, and the appellant must affirmatively show error. [Citation.] '"All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."' [Citation.]" (*Id.* at p. 1183.)

McBeth urges that the Settlement Agreement was conditioned on a title report showing clear title to the Broadway Property, citing section 1434, which states, "An obligation is conditional, when the rights or duties of any party thereto depend upon the occurrence of an uncertain event," and section 1436, which states, "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." She claims that Woods failed to obtain a clear title report because it showed several liens against the Broadway Property arising from debts incurred by McBeth, which McBeth was not required to remove under the terms of the Settlement Agreement.

As noted, McBeth failed to provide on appeal the probate court's tentative decision and extensive "reasonings" regarding the enforceability of the Settlement Agreement, and McBeth therefore cannot show error on appeal. In any event, we disagree with McBeth's argument. "'"One who makes impossible the performance or

10

happening of the condition precedent upon which his liability by the terms of the contract is made to depend, cannot avail himself of its non-performance.""" (*Pacific Venture Corporation v. Huey* (1940) 15 Cal.2d 711, 717.) Assuming Woods's obtaining clear title to the Broadway Property was a condition precedent, McBeth's refusal to remove the liens and provide clear title to the Broadway Property made it impossible for Woods to obtain a clear title report. Thus, under *Pacific Venture Corporation*, McBeth cannot benefit by her refusal to remove the liens. And under *Doryon v. Salant* (1977) 75 Cal.App.3d 706, a contracting party may waive a provision placed in a contract solely for the party's own benefit. (*Id.* at p. 712.) Woods's obtaining a title report showing clear title only benefited him; his willingness to waive that condition was demonstrated by his attempt to enforce the Settlement Agreement. (See *Britschgi v. McCall* (1953) 41 Cal.2d 138, 143 [where elimination of a defect is deemed for sole benefit of buyer, buyer may waive it].)

Accordingly, we conclude that McBeth failed to establish that the probate court erred in concluding the Settlement Agreement was enforceable.

## C. McBeth has not shown the probate court erred by concluding Woods's Estate is entitled to an offset

Without citation to the record or authority, McBeth contends that the probate court erred when it determined that Woods's Estate did not need to pay McBeth $25,000, claiming "[t]here is no legal authority for this ruling." We reject her argument. If an appellant's brief does not contain a legal argument with a citation of authorities on the point made, the court need not furnish argument or search the record for support for the appellant's contention but may treat it as forfeited and pass it without consideration. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.)

McBeth's further contention that Woods's Estate is not entitled to attorney fees, again without citation to the record or authority, must be disregarded because she failed to file an appeal from that order.

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

MALLANO, P. J.

We concur:

CHANEY, J.

JOHNSON, J.

12